A06A1711. JOHNSON v. THE STATE.
(640 SE2d 644)

PHIPPS, Judge.

Trianthony Cannon repeatedly raped eleven-year-old V. J. over a nine-month period. In connection with those rapes, a jury found V. J.'s mother, Julia Johnson, guilty of cruelty to children, party to the crime of rape, and contributing to the deprivation of a minor. Johnson appeals, arguing that the evidence was insufficient to support her convictions, that she received ineffective assistance of counsel, that the trial court improperly admitted hearsay evidence, that she should have been sentenced only for contributing to the deprivation of a minor, and that her life sentence constitutes cruel and unusual punishment. We find no reversible error and affirm.

On appeal from a criminal conviction, the defendant no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to the jury's verdict. We do not weigh the

---

evidence or evaluate witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the charged offenses.[1]

V. J. testified that in May 2003, Cannon moved into the home on Candlelight Lane that she shared with her mother and younger brother. Within a few weeks, Cannon had sexual intercourse with V. J., and he continued to do so approximately three times a week throughout the summer. After Cannon made V. J.'s younger brother, R. J., watch Cannon and V. J. have sex, R. J. told his mother, who called the police and had Cannon arrested.

In September 2003, V. J. was interviewed at the Georgia Center for Children. V. J. testified that Cannon and her mother told her not to reveal anything during the interview or else "they would take me away from my mama." Accordingly, V. J. told the interviewer only that Cannon had touched her buttocks.

Cannon was charged with burglary and aggravated child molestation. Nicola Bone, a victim advocate with the Fulton County District Attorney's Office, testified that Johnson came to her office, saying that the charges against Cannon were "a big misunderstanding," that she wanted them dropped, and that she needed Cannon's financial assistance. Johnson called Bone the next day and said that she planned for Cannon to "come home" when he got out of jail. Because Bone was concerned about Cannon returning to Johnson's home, she called the Department of Family and Children Services ("DFCS").

In mid-October 2003, Karen Felder, who was then a DFCS investigator, went to Johnson's home. Felder told Johnson that her information indicated that Cannon had touched V. J. inappropriately. Johnson said that was "incorrect." Felder then questioned V. J. in her mother's presence, after which Johnson stated that she "forgot" that her daughter had reported that Cannon had kissed her on the lips. Felder discussed with Johnson the need to keep Cannon away from her children. Johnson told Felder that she was planning to move and that her children would have no contact with Cannon. In addition, Johnson signed a DFCS safety plan in which she agreed, among other things, to keep her children away from Cannon and to obtain a restraining order against him.

Kendall Carter, the Fulton County Assistant District Attorney assigned to Cannon's case, testified that at Cannon's bond hearing on October 14, 2003, Johnson asked Carter to drop the charges against Cannon because he "had not actually committed any crime against . . .

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Ratledge v. State*, 253 Ga. App. 5, 6 (1) (557 SE2d 458) (2001).

her daughter." Johnson claimed that she had had Cannon arrested "out of spite." According to Carter, Johnson brought V. J. along and used her "as a prop" by gesturing toward her and saying that "nothing had been done to this child, the child was perfectly fine." Based on Johnson's statements, the court released Cannon on a signature bond, a procedure that Carter called "very atypical."

V. J. testified that Cannon moved back to Johnson's home after his release from jail. When the family moved to a house on Fairburn Road, Cannon continued to live with them. A neighbor testified that Cannon moved the furniture into the new residence, and the landlord testified that Cannon paid the rent. The neighbor also testified that after hearing children's screams from the Fairburn Road residence, she asked V. J. if Cannon was beating her brother and her. V. J. responded that Cannon was having sex with her. According to the neighbor, "I said, was your mother there; and she said yes. I said, what was she doing, trying to fight him off? And she said, no, ma'am, she just told me it'll be over."

V. J. further testified that in the fall of 2003, she began feeling sick to her stomach. A friend of her mother's gave her a pregnancy test, which turned out positive. Although V. J. testified that she took the test in October or November, her foster care case manager, Pamela Todd, testified that V. J. told her that the pregnancy had been discovered in September. In addition, Felder, the DFCS investigator, testified that Johnson told her that she had taken V. J. to get a pregnancy test in September.

In January 2004, Johnson took V. J. to a children's hospital emergency room, telling medical personnel that her daughter was pregnant and needed to be examined. A hospital official who saw V. J. testified that she was "obviously pregnant." Johnson told a doctor at the hospital that she had suspected back in September that her boyfriend was molesting her daughter. The police were called to the hospital, and they later arrested Cannon and Johnson. V. J. and her brother were removed from Johnson's home and placed in foster care.

Psychotherapist Pat Highsmith-Lawyer testified that V. J. told her that Cannon had had sex with her at both the Candlelight and the Fairburn residences. V. J. also said that she had told her mother that she thought she was pregnant, and her mother said "not to worry about it."

1. Johnson challenges the sufficiency of the evidence to support her rape conviction.

(a) Johnson does not deny that Cannon repeatedly raped her daughter, but she asserts that there was no evidence that any of the rapes occurred between October 1, 2003 and January 6, 2004, the time period specified in her indictment. That is not correct. The evidence showed that Johnson, her children, and Cannon moved to a

home on Fairburn Road after Cannon's release from jail in October 2003,[2] and that they lived there until V. J. was removed from the home in January 2004. A neighbor testified that V. J. told her that Cannon was having sex with her at the Fairburn house. In addition, V. J. told a psychotherapist that Cannon began abusing her at the Candlelight Lane residence and continued doing so at the Fairburn Road residence. The jury could have concluded from this evidence that at least one rape occurred during the period specified in the indictment.

(b) Johnson contends that the evidence did not establish that she was a party to Cannon's rapes. Under OCGA § 16-2-20, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."[3] A person is concerned in the commission of a crime if he "[i]ntentionally aids or abets in the commission of the crime" or "[i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime."[4]

> While mere presence at the scene of a crime and mere approval of the criminal act do not amount to sufficient evidence to establish that a defendant is a party to the crime, criminal intent may be inferred from a defendant's conduct before, during and after the commission of the crime. Evidence of a defendant's conduct prior to, during, and after the commission of a criminal act will authorize the defendant's conviction for commission of the criminal act if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act.[5]

In *Hixon v. State*,[6] a mother was convicted of aiding and abetting two men in raping and molesting her minor daughter. With respect to one of the men, the evidence showed that the mother was aware that he had a sexual relationship with her daughter, said she would try to procure birth control pills for her daughter, whipped her daughter for getting into a fight with him, and allowed him to live in her home.[7] Although that mother argued on appeal that there was insufficient evidence that she was a party to the man's crimes, we affirmed her

---

[2] Although the record does not reveal Cannon's exact release date, it shows that his bond hearing was on October 14, after which he was released on a signature bond.

[3] OCGA § 16-2-20 (a).

[4] OCGA § 16-2-20 (b) (3), (4).

[5] *Jordan v. State*, 272 Ga. 395, 396 (1) (530 SE2d 192) (2000) (citations omitted).

[6] 251 Ga. App. 27 (553 SE2d 333) (2001).

[7] Id. at 29 (1).

convictions. We held that "the jury could have inferred that the [mother] intentionally offered her daughter 'encouragement' in a continuing sexual relationship with [the man]."[8]

In similar fashion, the evidence in this case authorized an inference that Johnson encouraged Cannon's ongoing rapes of her daughter. The state presented evidence that Johnson knew before Cannon's September 2003 arrest that he had been having sex with V. J. and that V. J. was pregnant. Nevertheless, Johnson told her daughter to lie to investigators and downplay the abuse. While Cannon was in jail, a DFCS worker visited Johnson's home and impressed upon her the importance of keeping Cannon away from her children. Johnson signed a safety plan agreeing that Cannon would have no contact with her children and that she would seek a restraining order to prevent such contact. Yet Johnson never applied for the order, and she arranged for Cannon's release from jail by lying to a judge and to personnel from the district attorney's office, insisting that Cannon was innocent. After Cannon's release from jail, Johnson allowed him to move back into her home, where he resumed raping V. J., a child under her control.

Johnson tries to distinguish *Hixon* by arguing that, unlike the mother in that case, she took no affirmative action to encourage Cannon to rape V. J., but rather — at most — failed to prevent him from doing so. Failure to intervene, she asserts, cannot support a conviction on a party-to-the-crime theory.[9] But the state presented evidence that Johnson was not simply guilty of inaction. There was evidence that she took multiple affirmative steps that facilitated the rapes, including (1) coaching V. J. to lie to investigators about the extent of the abuse, (2) lobbying to have the charges against Cannon dropped and to get him released from jail, (3) falsely promising DFCS that she would protect V. J. by keeping her away from Cannon and by obtaining a restraining order against him, (4) allowing Cannon back into her house despite her knowledge of the rapes and her agreement with DFCS to protect V. J., and (5) responding to the rapes at the Fairburn Road residence by assuring her daughter that "it will be over." The evidence was sufficient for the jury to conclude that, through her affirmative acts, Johnson encouraged the rapes and acted as a party to them.

---

[8] Id. (citation omitted).

[9] But see *Porter v. State*, 243 Ga. App. 498, 499-500 (1) (a) (532 SE2d 407) (2000). There, we held that the evidence was sufficient to support a mother's convictions as a party to cruelty to children and contributing to the deprivation of a minor based on her husband's abuse of her son while she was not present. The evidence showed that the mother left the child alone with her husband even though she knew that "his form of discipline was child abuse," that he had been abused himself as a child, and that he was frustrated with her son. Id. at 500.

2. Johnson moved for a new trial on the grounds of ineffective assistance of counsel, alleging, among other things, that her lawyer failed to pursue a battered woman syndrome defense. After an evidentiary hearing, the trial court summarily denied the motion.

> The standard for determining ineffective assistance of counsel is whether trial counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defense. This court gives deference to the trial court's factual findings, unless clearly erroneous, but independently applies the legal principles to the facts to determine the merits of a claim of ineffective assistance of counsel. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[10]

We agree with the trial court that Johnson failed to show that she received ineffective assistance of counsel.

At a hearing on the motion for new trial, Dr. Robert Shaffer testified that Johnson was suffering from post-traumatic stress disorder (PTSD) and battered woman syndrome (a variety of PTSD) as a result of Cannon's terroristic threats and stalking behavior. Shaffer further testified that these diagnoses could explain Johnson's failure to protect her daughter from Cannon's abuse. Shaffer admitted, however, that his conclusions were based solely on Johnson's post-conviction medical records and that he had not investigated her pre-conviction history.

The state presented the testimony of a forensic psychiatrist who concluded that Johnson was not suffering from PTSD while Cannon was molesting her daughter and that Johnson's behavior could be better explained by her dependence on cocaine. Further, the state's psychiatrist offered his opinion that Johnson was responsible for her actions during the period of her daughter's molestation.

Johnson's trial lawyer testified that she met with Johnson personally at least ten times before trial and asked her to reveal any information that might be helpful to her defense, including any history of abuse. Johnson said only that she had been in an abusive relationship "a while ago," before her relationship with Cannon, that was not relevant to the charges against her. The problem, Johnson told her attorney, was that Cannon continued to come to her home uninvited and unwelcome, prompting her to call 911, but that Cannon would leave before the police arrived. The lawyer testified that

---

[10] *Sedlak v. State*, 275 Ga. 746, 751-752 (3) (571 SE2d 721) (2002) (citations and punctuation omitted).

Johnson's manner was tough and assertive and did not suggest that she was being beaten. Nor, she testified, were there any police or medical reports or injuries to Johnson or fights between Johnson and Cannon. The lawyer further testified that she followed up on Johnson's information and presented a defense theory "that [Johnson] tried to get help wherever she could and it just seemed like she was falling through the cracks; she couldn't get help from anyone."

Based on the evidence, the trial court was authorized to conclude that Johnson satisfied neither prong of the test for determining whether counsel was constitutionally ineffective. First, despite prompting, Johnson failed to provide her attorney with information that might have alerted the attorney to the possibility of a battered woman syndrome defense. Johnson cites, and we find, no authority for the proposition that an attorney can be faulted for failing to mount a defense not brought to her attention. Second, assuming counsel had sought to present a battered woman's syndrome defense, we question whether the trial court could have allowed it. Such a defense is a justification defense, in which the defendant admits the underlying conduct but seeks to explain it;[11] yet Johnson denied knowing about the rapes and therefore denied participating in them.[12]

Third, Johnson did not show that the absence of a battered woman syndrome defense prejudiced her case. Her attorney testified that, at trial, she tried to portray Johnson as a victim whose cries for help went unheeded. Thus, although the term "battered woman syndrome" was not used, the defense did endeavor to provide a noncriminal explanation for Johnson's behavior. Moreover, the evidence at the motion for new trial hearing cast doubt upon the credibility of a battered woman syndrome defense. Johnson's expert witness admitted that his analysis had been limited, and the state's expert witness blamed Johnson's behavior on drug abuse, not PTSD. Under the circumstances, the trial court was authorized to conclude that Johnson failed to show a reasonable probability that, but for counsel's failure to present a battered woman syndrome defense, the outcome of the case would have been different.

3. Johnson challenges the admission of two pieces of hearsay evidence: (1) Highsmith-Lawyer's testimony that R. J. told her that he saw Cannon having sex with V. J. and that he reported it to his mother several times; and (2) V. J.'s neighbor's testimony that V. J. said that Johnson had not tried to stop Cannon from molesting her

---

[11] See *McBrayer v. State*, 259 Ga. 513, 515 (3) (c) (383 SE2d 879) (1989).

[12] See *Olarte v. State*, 273 Ga. App. 96, 102 (2) (e) (614 SE2d 213) (2005) (counsel was not ineffective for failing to present expert testimony that client suffered from PTSD and battered woman syndrome where client did not admit participation in crimes).

and that Johnson had merely assured her daughter, "[I]t'll be over." However, the Child Hearsay Statute allows the admission of an out-of-court statement by a child under 14 describing an act of sexual contact performed on the child or on another in the child's presence if (1) the child is available to testify and (2) "the court finds that the circumstances of the statement provide sufficient indicia of reliability."[13]

Although Johnson complains that the trial court held no hearing to ascertain the reliability of the statements, the statute requires neither a hearing nor express judicial findings of reliability.[14] Rather, the reliability requirement is met if "after both sides have rested at trial, competent evidence of record exists which will support a finding of 'indicia of reliability.' "[15] Moreover, Johnson failed at trial to object to the admission of the statements or to seek a court ruling on their reliability,[16] and she has not explained on appeal how the record lacks evidence of reliability. Under the circumstances, we find no reversible error in the admission of the statements.

4. Count 9 of the indictment charged Johnson with cruelty to children during the period from October 1, 2003 to January 6, 2004, by "ignoring [her daughter's] repeated pleas that she was being sexually abused by Trianthony Cannon and by failing to protect [her daughter] from said abuse." Johnson claims that the evidence was insufficient to support her conviction on this count because there was no proof that V. J. pleaded for help during the relevant period or that she suffered excessive mental pain as a result of her mother's inaction.[17] We disagree.

"Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."[18]

> The determination of what is cruel or excessive physical or mental pain is to be made by the jury. "Cruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the

---

[13] OCGA § 24-3-16.

[14] *Brock v. State*, 270 Ga. App. 250, 254 (8) (605 SE2d 907) (2004).

[15] *Tidwell v. State*, 219 Ga. App. 233, 235 (1) (b) (464 SE2d 834) (1995) (citation and punctuation omitted).

[16] See *Brown v. State*, 280 Ga. App. 884, 888 (3) (635 SE2d 240) (2006).

[17] The state failed to respond to Johnson's argument. In its appellate brief, the state instead argued that there was sufficient evidence that Johnson failed to obtain necessary medical treatment for V. J. That evidence, however, applied to Count *8* of the indictment, which alleged cruelty to children by depriving V. J. of prenatal medical care. The trial court directed a verdict for Johnson on Count 8, so it is not relevant here.

[18] OCGA § 16-5-70 (b).

trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain (in this situation, mental rather than physical pain).[19]

There was sufficient evidence to support Johnson's conviction on Count 9. From the testimony of Johnson's Fairburn Road neighbor, the jury could have inferred that V. J. screamed when Cannon raped her, that Johnson was home at the time, that she failed to intervene, and that she told her daughter that "it will be over." Contrary to Johnson's assertions, the jury could have concluded that V. J. was suffering from excessive mental pain caused, at least in part, by her mother's refusal to heed her outcries. Furthermore, because the evidence showed that Cannon lived with V. J.'s family on Fairburn Road after he was released from jail in October 2003 until his arrest in January 2004, the jury could have concluded that V. J.'s cries for help occurred during the time period specified in Count 9 of the indictment.

5. Johnson argues that her felony convictions for rape and cruelty to children should be "subsumed by" her misdemeanor conviction for contributing to the deprivation of a minor. She contends that, under the rule of lenity, her failure to protect her daughter should be penalized under the statute that carries the lesser punishment. We disagree.

> The rule of lenity entitles the accused to the lesser of two penalties where the *same* conduct would support either a felony or [a] misdemeanor conviction. Even though the rule of lenity may apply when the applicable misdemeanor is not a lesser included offense to the charged felony, the essential requirement of the rule of lenity is that both crimes could be proved with the same evidence.[20]

The state had to use different evidence to prove each of the three crimes of which Johnson was convicted. As discussed more fully in Division 1, Johnson's rape conviction required proof that she took affirmative steps to aid Cannon in having carnal knowledge of her daughter forcibly and against V. J.'s will.[21] As discussed more fully in Division 4, Johnson's cruelty to children conviction required proof

---

[19] *Sims v. State*, 234 Ga. App. 678, 679 (1) (a) (507 SE2d 845) (1998) (punctuation and footnotes omitted).

[20] *Quaweay v. State*, 274 Ga. App. 657, 658 (618 SE2d 707) (2005) (citations omitted).

[21] See OCGA § 16-6-1 (a) (1).

that she caused V. J. excessive mental pain.[22] Contributing to the deprivation of a minor, by contrast, requires a showing that the defendant wilfully committed an act or wilfully failed to act "when such act or omission would cause a minor to be found to be a deprived child,"[23] which is statutorily defined as a child who lacks "proper parental care or control . . . or other care or control necessary for the child's physical, mental, or emotional health or morals."[24] Johnson's conviction for contributing to the deprivation of a minor, therefore, required proof that she failed to provide V. J. with the proper care necessary for her health. The state met this proof requirement by presenting evidence that Johnson, among other things, neglected for months to seek prenatal care for V. J. even though she knew about the pregnancy. "Because different facts were required to prove [rape, cruelty to children, and contributing to the deprivation of a minor], the rule of lenity does not apply."[25]

6. Finally, Johnson argues that her sentence of life imprisonment for rape is unconstitutionally cruel and unusual punishment because it was her first offense and she was not an active participant in the crime. She acknowledges that her sentence falls within statutory limits[26] and that this court, as a rule, does not review for legal error a sentence that is within the statutory limit.[27] Johnson argues, nonetheless, that we should examine the fairness of her sentence because OCGA § 17-10-6.1 (a) (5) prohibits her from seeking such scrutiny from the Sentence Review Panel. By its plain terms, however, that statute does not prohibit Johnson from applying for a panel review of her sentence. Accordingly, we do not address the fairness of Johnson's sentence.

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED DECEMBER 1, 2006 —
RECONSIDERATION DENIED DECEMBER 19, 2006 — ▮

*Charles H. Frier,* for appellant.

---

[22] See *Porter,* supra, 243 Ga. App. at 500 (1) (c) (cruelty to children conviction did not merge with conviction for contributing to the deprivation of a minor).

[23] OCGA § 16-12-1 (b) (3); see also *Bagby v. State,* 274 Ga. 222, 223 (1) (552 SE2d 807) (2001).

[24] OCGA § 15-11-2 (8) (A).

[25] *Quaweay,* supra.

[26] See OCGA §§ 16-2-21 (party to crime may be punished for commission of crime); 16-6-1 (b) (defendant convicted of rape may be sentenced to life imprisonment without parole, life imprisonment, or not less than ten nor more than twenty years imprisonment).

[27] See, e.g., *Hunter v. State,* 263 Ga. App. 747, 749 (3) (589 SE2d 306) (2003).

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Assistant District Attorneys,* for appellee.