## A07A1885. HEAD v. THE STATE.
(653 SE2d 540)

PHIPPS, Judge.

Kent Head was convicted of sale of cocaine. He appeals the denial of his motion for new trial. He challenges the sufficiency of the evidence as dependent on the trustworthiness of Roland Ray, a witness lacking in credibility. He challenges the effectiveness of his trial attorney based on (a) her failure to request a mistrial or curative instruction when a police investigator testified to past dealings with Head and (b) her failure to question Ray concerning a note he had written recanting a statement he made incriminating Head. Finding no merit in any of Head's claims of error, we affirm.

Ray, the principal state's witness, was a recidivist drug offender. As such, he entered a guilty plea to a drug charge in 2002 and agreed

---

[6] 243 Ga. App. at 273.

to cooperate with the police in apprehending other drug offenders. On April 3, 2002, and again on April 10, City of Warner Robins police investigators Billy Styles and Tim Gray met with Ray. On each occasion, they searched him to ensure that he was not in possession of any contraband or money, they provided him with $100 in official government funds to purchase drugs, they equipped him with an audio monitoring device, and they maintained visual surveillance of him from when he left them until he returned. On April 3, the investigators saw Ray walk to Angela Holmes's house with the $100 in government funds and then return without the money but with $100 worth of crack cocaine. On April 10, Ray returned to Holmes's house. He remained there for about one hour and then drove with Holmes in her vehicle to Head's mother's house. They stayed there for about five minutes and then returned to Holmes's house. After leaving Holmes's house, Ray returned to the investigators. Again, he had $100 worth of crack cocaine and no money.

Immediately after the April 3 buy, Ray told the investigators that after he had gone to Holmes's house, she provided him with the cocaine and told him to give the $100 to Head. Ray gave like testimony at trial. Ray also testified that on April 10, Head accompanied Holmes and him to Head's mother's house; and that, after they arrived, Head got out of the vehicle, retrieved the cocaine, and gave it to Ray. The investigators who maintained surveillance of the vehicle testified, however, that they saw only Ray and Holmes leave Holmes's house, go to Head's mother's house, and then return to Holmes's house in the vehicle. Gray further testified, however, that once Ray and Holmes arrived at Head's mother's house, he overheard Ray talking to Head at the house.

During his testimony at trial, Gray also explained that he had recognized Head's voice on April 10 because he had had dealings with him in the past. Defense counsel then requested a bench conference at which she complained that the officer's testimony had improperly put Head's character in issue. Although the court opined that the officer's comment did not, in and of itself, have that effect, the court cautioned the prosecutor that the witness was "getting over the edge" and instructed him to "rephrase the question and lead him somewhere else."

Both Head and Holmes were charged with sale of cocaine on April 3 and 10. Holmes pled guilty and, in her testimony at Head's trial, she acknowledged that Head and Ray had been at her house together several times in 2002 when she had crack cocaine there. The jury found Head guilty of the April 3 sale but not guilty of the April 10 sale.

After the jury returned its verdict, defense counsel informed the court that, after the state had rested during the trial, someone had handed her a note and that her failure to introduce it might be the

basis of a claim of ineffective assistance of counsel. At the hearing on Head's motion for new trial, it was shown that the note bore the handwritten name "Roland Ray" and stated that, "I Roland Ray on October 8, 2002, did not buy or receive any crack cocaine from Kent Head Jr. given to him by Angela Holmes. I was forced to write that statement that I received crack cocaine from Ms. Holmes." Counsel explained that, in consultation with Head, she had decided not to seek to introduce the note in evidence, because she had been attacking Ray's credibility throughout the trial and did not want to then ask the jury to believe him; moreover, Head was charged with selling cocaine on dates other than that specified in the note; in addition, Ray could have denied authorship of the note or claimed that he had been coerced into writing it. Counsel further testified that she did not ask for a mistrial or curative instruction after the investigator alluded to his prior dealing with Head, because she did not want to draw further attention to the remark. Additional testimony given by defense counsel at the hearing on Head's motion for new trial authorized the trial court to find that she was an experienced criminal lawyer whose pretrial consultations with Head, case investigation, and trial preparation were more than adequate to satisfy her constitutional duty.

1. Under well established legal principles, Head's challenge to the sufficiency of the evidence is without merit.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[1] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[2]

The evidence here, viewed in accordance with the above standard, was legally sufficient to sustain Head's conviction of sale of cocaine.

2. Under the applicable standard, Head's ineffective assistance of counsel claims are similarly without merit.

> To establish a claim of ineffective assistance of counsel, a defendant must show that his attorney's representation

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *Rankin v. State*, 278 Ga. 704 (606 SE2d 269) (2004) (citations omitted).

fell below an objective standard of reasonableness and that there was a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy.[3]

Counsel's failure to request a mistrial based on the investigator's remark does not constitute ineffective assistance, because it affirmatively appears from the record that the trial court in its discretion would have denied the request.[4] "[F]ailure to pursue a futile motion does not constitute ineffective assistance."[5] Counsel's determination that a curative instruction would have compounded any harm by drawing attention to the remark was a matter of trial strategy that does not equate with ineffective assistance.[6] And counsel's decision in consultation with Head not to question Ray concerning the note, even if unwise, was similarly a question of trial strategy not amounting to ineffective assistance.[7] "Given trial counsel's experience and [her] conduct in general in defending [Head], we find that the trial court's conclusion that [Head] had been afforded effective assistance of counsel" is amply supported by the record.[8]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 1, 2007.

*Rodney E. Davis*, for appellant.
*Kelly R. Burke, District Attorney, George H. Hartwig III, Joshua D. Morrison, Assistant District Attorneys*, for appellee.

---

[3] *Collier v. State*, 266 Ga. App. 345, 351 (2) (596 SE2d 795) (2004) (punctuation and footnotes omitted).

[4] See *Grindle v. State*, 265 Ga. App. 717-718 (1) (595 SE2d 549) (2004).

[5] *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003) (punctuation and footnote omitted).

[6] See *Timberlake v. State*, 200 Ga. App. 64, 68-69 (5) (406 SE2d 537) (1991).

[7] See id.; see generally *Hardeman v. State*, 281 Ga. 220, 221 (635 SE2d 698) (2006); compare *Jowers v. State*, 260 Ga. 459, 461-462 (2) (396 SE2d 891) (1990); *Collier*, supra.

[8] *Timberlake*, supra at 69.