A11A2272. ADORNO v. THE STATE.
A11A2273. RAMIREZ v. THE STATE.
(724 SE2d 816)

DILLARD, Judge.

Following a jury trial, Sheila Adorno was convicted on two counts of cruelty to children in the first degree, and her co-defendant, Mercedes Ramirez (collectively "defendants"), was convicted on four counts of child molestation. Both appeal their convictions and the denial of their respective motions for new trial. Adorno challenges the sufficiency of the evidence supporting her convictions, and Ramirez contends that the trial court erred in reopening the evidence after closing arguments were completed and in denying his claim that his trial counsel provided ineffective assistance by failing to move for a mistrial after the trial court reopened the evidence. Because the charges arose from the same incidents and the defendants were tried together, we have consolidated their separate appeals for review. And for the reasons set forth infra, we affirm in both cases.

Viewed in the light most favorable to the jury's guilty verdict,[1] the evidence shows that in April 2008, ten-year-old S. R. and

---

[11] (Footnote omitted.) Id.

[1] *See, e.g., Goolsby v. State,* 299 Ga. App. 330, 330-31 (682 SE2d 671) (2009); *see also*

twelve-year-old N. R. were living in an apartment with their mother, Adorno, their mother's boyfriend, Ramirez, and two other younger half-siblings. On April 18, 2008, S. R. was at school when she told one of her teachers during class that she had a friend whose stepfather came into her bedroom at night and "did things" to her. The teacher responded that the friend should tell her mother, to which S. R. replied that her friend had done so but that her mother did not believe her. Obviously concerned by the discussion, the teacher asked S. R. if she was actually talking about herself. S. R. then began crying, admitted that she was describing her own situation, and told her teacher that Ramirez had been sexually molesting her. When the teacher explained that she would have to tell the school principal and authorities what had happened, S. R. became even more upset and claimed that her mother would "whoop [her] hard" if she learned that S. R. told anyone about Ramirez's actions.

Nevertheless, that same day, the teacher informed the school's counselor about S. R.'s outcry, and thereafter, the counselor met with S. R. to discuss the matter. Although S. R. initially denied that she (as opposed to the unnamed friend) had been sexually molested, she eventually began crying and admitted that Ramirez had inappropriately touched her on several occasions and that she had told her mother about the molestation on at least two of those occasions. At the end of their discussion, the counselor told S. R. that she had to call the police. And again, S. R. became more upset and stated that her mother would whip her. But that same day, the counselor contacted the police, and an officer was sent to interview S. R. and her older sister, N. R.

A few days later, a counselor with a local child advocacy center conducted separate interviews with S. R. and N. R. During those interviews, both girls stated that Ramirez had touched their respective chests and privates on several occasions and that they had made their mother aware of the abuse. In addition, both S. R. and N. R. recounted a fairly recent incident, in which N. R. woke up in the middle of the night and found that Ramirez was in the bed where both girls slept and was licking S. R.'s privates. When N. R. attempted to hit Ramirez, he stopped, and both girls ran into their mother's bedroom to tell her what had happened. However, Ramirez denied doing anything inappropriate and began whipping both girls with a belt until their mother eventually intervened. Both girls also told the child advocacy counselor that the only thing their mother did to try to stop Ramirez's sexual abuse was to install a dead-bolt on their bedroom door and tell them to lock their door at night.

---

*Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

In a joint indictment, Ramirez was charged with four counts of child molestation,[2] and Adorno was charged with two counts of cruelty to children in the first degree.[3] As previously noted, Ramirez and Adorno were tried jointly, during which S. R.'s teacher, the school counselor, and the child advocacy counselor testified as to the girls' outcries concerning Ramirez's sexual abuse and Adorno's failure to intervene. Importantly, both S. R. and N. R. directly testified about Ramirez's abuse and that they had informed their mother about it. In addition, Ramirez and Adorno testified in their own defense and denied all the charges. Nevertheless, at the conclusion of the trial, the jury found both Ramirez and Adorno guilty on all counts of the indictment.

Thereafter, Ramirez and Adorno filed separate motions for new trial. And after conducting separate hearings on the respective motions, the trial court denied them. These appeals follow.

1. In her sole enumeration of error, Adorno contends that the evidence was insufficient to support her convictions of cruelty to children in the first degree. This contention lacks merit.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[4] And in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[5] Accordingly, the jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case. . . ."[6] With these guiding principles in mind, we now turn to Adorno's claim of error.

Under OCGA § 16-5-70 (b), a "person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." For purposes of this Code section, "malice in the legal sense imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness

---

[2] *See* OCGA § 16-6-4 (a).

[3] *See* OCGA § 16-5-70 (b).

[4] *See, e.g.*, *English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[5] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson*, 443 U. S. at 319 (III) (B).

[6] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

of a plain and strong likelihood that such harm may result."[7] Furthermore, "[t]he determination of what is cruel or excessive physical or mental pain is to be made by the jury."[8] And

> "[c]ruel" and "excessive" are adjectives which inherently require a consideration of degree; the law does not set a bright line but leaves to the trier of fact, taking into account societal norms generally accepted, whether certain behavior inflicts "cruel" or "excessive" pain (in this situation, mental rather than physical pain).[9]

In the case sub judice, Count 5 of the indictment charged Adorno with cruelty to children "by allowing Mercedes Ramirez to molest [S. R.] and threatening [S. R.] if she told anyone about the molestation." Using the same language, Count 6 charged Adorno with cruelty to children as to N. R. Adorno specifically argues that there was no evidence that she knew about Ramirez's actions until the most recent incident or that she had threatened either of her daughters so that they would not tell others about Ramirez's abuse. However, there was evidence that both S. R. and N. R. told Adorno several times that Ramirez was molesting them but that Adorno did not intervene, except to install a dead-bolt on the girls' bedroom door, and did not contact the police. In addition, there was evidence that Adorno issued threats to dissuade her daughters from revealing Ramirez's actions. But even if we were to assume for the sake of argument that evidence showing that Adorno threatened both daughters was lacking, it is of no consequence. As we have previously explained, "(i)f a crime may be committed in more than one way, it is sufficient for the State to show that it was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form."[10] And here, as previously noted, there was evidence from which the jury could infer that Adorno was aware of Ramirez's sexual abuse of her daughters but did not adequately intervene. The evidence was therefore sufficient to support Adorno's convictions of cruelty to children in the first degree.[11]

---

[7] *Ferrell v. State*, 283 Ga. App. 471, 474-75 (2) (641 SE2d 658) (2007) (punctuation omitted).

[8] *Johnson v. State*, 283 Ga. App. 99, 106 (4) (640 SE2d 644) (2006) (punctuation omitted).

[9] *Id.* at 106-07 (4) (punctuation omitted).

[10] *Judice v. State*, 308 Ga. App. 229, 232 (2) (707 SE2d 114) (2011) (punctuation omitted).

[11] *See Johnson*, 283 Ga. App. at 106-07 (4) (affirming mother's cruelty-to-children conviction based on evidence that mother did not intervene despite knowledge that her boyfriend was sexually abusing her daughter); *Straker v. State*, 259 Ga. App. 904, 906 (b) (578 SE2d 568) (2003) (same). Moreover, although Ramirez does not challenge the sufficiency of the

2. Ramirez contends that the trial court erred in reopening the evidence after both parties had made closing arguments. We disagree.

With regard to the reopening of evidence, the Supreme Court of Georgia has adopted a forgiving rule, "and grants trial courts very broad discretion in permitting parties to offer additional evidence at any stage of the trial."[12] In fact, our Supreme Court has noted that "leniency in this area is very unlikely to constitute an abuse of discretion, as the appellate courts are guided by OCGA § 24-1-2, which provides that '[t]he object of all legal investigation is the discovery of truth.' "[13] Indeed, even after jury deliberations have begun, the trial court, in the sound exercise of discretion, may reopen the evidence and allow the admission of new evidence.[14]

Here, during the investigating police officer's testimony and over the State's objection, the trial court ruled that the officer could not testify about her interviews with S. R. and N. R. because such testimony would constitute inadmissible hearsay. And for the same reason, the trial court initially prohibited the State from having the child advocacy counselor testify regarding her forensic interviews of the girls and from playing the video recordings of those interviews.

However, after all parties completed their closing arguments, but before the jury was charged, the trial court held a bench conference outside the presence of the jury, in which it informed the parties that it had made a mistake in excluding the police officer and child advocacy counselor's testimony. Specifically, the trial court informed the parties that upon further review, it had misread applicable case authority and instead should have allowed the excluded testimony into evidence pursuant to the Child Hearsay Statute.[15] Consequently, the trial court determined that it would reopen the evidence to allow the State to call the child advocacy counselor as a witness and to introduce the recordings of the counselor's forensic interviews with N. R. and S. R. into evidence. In addition, the trial court ruled that both defendants could also

---

evidence supporting his convictions, we note that "[i]t is well established that in child molestation cases, the victim's testimony alone is sufficient to support a conviction." *Green v. State*, 293 Ga. App. 752, 753-54 (1) (667 SE2d 921) (2008).

[12] *Taylor v. State*, 282 Ga. 502, 504 (3) (651 SE2d 715) (2007).

[13] *Id.* (punctuation omitted). *See* Paul S. Milich, Georgia Rules of Evidence § 13:4, p. 228 (2d ed. 2002).

[14] *State v. Roberts*, 247 Ga. 456, 458 (277 SE2d 644) (1981).

[15] *See* OCGA § 24-3-16 ("A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.").

introduce additional evidence if they chose to do so. Both defendants then objected, but neither moved for a mistrial. And thereafter, the State called the child advocacy counselor to testify and played for the jury the recordings of the counselor's forensic interviews of S. R. and N. R.

Ramirez now argues that the trial court erred in reopening the evidence. But the trial court was correct in determining that it had erred by initially excluding the child advocacy counselor's testimony and the recordings of her forensic interviews of N. R. and S. R.[16] Accordingly, we conclude that it did not abuse its discretion in reopening the evidence to the testimony and recordings.[17]

3. Ramirez further contends that his trial counsel provided ineffective assistance by failing to move for a mistrial after the trial court reopened the evidence. We disagree.

In order to prevail on his claim of ineffective assistance of counsel, Ramirez "must show that counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[18] Furthermore, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[19] Unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed de novo.[20]

Here, when the trial court informed the parties that it had decided to reopen the evidence, Ramirez's trial counsel initially moved for a mistrial but quickly withdrew the request, stating that he first needed to confer with Adorno's counsel before proceeding. After a recess, which the trial court called to allow the defendants' trial counsel to confer and to allow the State to contact the child advocacy counselor, both Adorno and Ramirez's trial counsel re-

---

[16] See *Lynn v. State*, 300 Ga. App. 170, 173 (2) (684 SE2d 325) (2009) (holding that under the Child Hearsay Statute, "the out-of-court statements of a child under the age of 14 about sexual contact or physical abuse performed with or on the child are admissible in evidence if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." (punctuation omitted)).

[17] See *Taylor*, 282 Ga. at 504 (3) (holding that trial court did not abuse its discretion in reopening the evidence after the State had rested to allow the State to play portions of defendant's videotaped statement to police or to present testimony from murder victim's mother).

[18] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); see *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

[19] *Chapman*, 273 Ga. at 350 (2).

[20] *Henderson v. State*, 303 Ga. App. 898, 898 (1) (695 SE2d 334) (2010).

newed their objections to the trial court's decision, but neither moved for a mistrial.

Ramirez now argues on appeal that his trial counsel rendered ineffective assistance by failing to move for a mistrial. However, as we held in Division 2, supra, the trial court's decision to reopen the evidence did not constitute an abuse of discretion. Therefore, any objection or motion for a mistrial would have lacked merit, and "[t]he failure to pursue a futile objection does not amount to ineffective assistance."[21] Accordingly, Ramirez failed to show that his trial counsel provided ineffective assistance.

*Judgments affirmed. Mikell, P. J., and Boggs, J., concur.*

DECIDED MARCH 1, 2012.

*Charles M. Evans*, for appellant (case no. A11A2272).
*Herbert Adams, Jr.*, for appellant (case no. A11A2273).
*Tracy Graham-Lawson, District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.

---

[21] *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008); *see Head v. State*, 288 Ga. App. 205, 208 (2) (653 SE2d 540) (2007) (holding that counsel's failure to request a mistrial did not constitute ineffective assistance because it affirmatively appeared from the record that the trial court in its discretion would have denied the request).