**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 9, 2015

# In the Court of Appeals of Georgia

A15A0997. TRAYLOR v. THE STATE.

ELLINGTON, Presiding Judge.

A Fulton County jury convicted Dathan Traylor of rape, OCGA §16-6-1 (a), aggravated sodomy, OCGA § 16-6-2 (a) (2), and two counts of armed robbery, OCGA § 16-8-41 (a). Following the denial of his motion for new trial, Traylor appeals, asserting that the evidence was insufficient to sustain the guilty verdict. He further argues that the trial court erred in denying his motion for mistrial and/or failing to give an appropriate curative instruction following inaccurate testimony related to a pretrial identification procedure and that his trial counsel rendered ineffective assistance. We find no reversible error and, therefore, affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LEd.2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 704 (606 SE2d 269) (2004).

So construed, the evidence set forth at trial shows that at approximately 6:00 a.m. on September 10, 2008, the female victim, M.B., was spending the night with her boyfriend, J. G., at his studio apartment. J. G.'s friend, M. R., was also there that night. The victims were sleeping when J.G., who admittedly sold marijuana, was awakened by a knock at the door. He recognized Earl Manassa, a 14-year-old whom he knew by the street name "Quick," and directed him to the back door. As he opened the back door, Manassa and two additional men stormed into the apartment and ordered the victims to the floor at gunpoint.

The gunmen began ransacking the apartment as they demanded money, drugs, and guns while at the same time ordering that the victims keep their faces to the

ground and not look at them. Manassa used duct tape to secure the hands and feet of the male victims and covered their heads with pillows while both remained lying face down. J. G. was struck twice on the back of the head with a gun during the encounter.

At some point, M. B. asked to use the restroom. As she entered the bathroom and sat on the toilet, one of the assailants followed her in, stood in front of her, and forced her at gunpoint to perform oral sex on him. The same man later took her behind a sheet dividing two areas of the apartment, bent her over a sofa, and had sexual intercourse with her. He wore a condom during the assault.

The assailants ultimately took approximately $1,500 cash from the victims and fled the apartment. M. B. then freed the male victims and the police were called.

The victims provided the responding detective with Manassa's street name and described the man who sexually assaulted M. B. as tall and having a slender build and low haircut. As to the third attacker, the victims were unable to provide a description apart from stating that he was dark-skinned and older than the other two. A rape kit was performed on M. B., but no biological evidence from the attacker was recovered or identified.

Ten days after the attack, as the victims were driving near J. G.'s apartment, M. B. saw Traylor sitting on the porch of a house and immediately screamed, "There's

3

the guy that raped me!" The victims returned to the apartment and called the police, who then came and escorted M. B., in a separate vehicle, back to Traylor's house. The escorting officer knocked on Traylor's door and M. B. confirmed that he was her attacker when he answered and stepped onto the porch. The officer arrested Traylor. M. B. subsequently told the investigating detective that she had seen Traylor at a corner store in the neighborhood the day before the crime.

During the ensuing trial, each of the victims testified and gave details of the robbery. M. B. again identified Traylor as the man who sexually assaulter her. She further testified that she recognized Traylor as a someone she had seen at the corner store two days to a week before the attack, although—seemingly contradicting her earlier statement to the detective—she denied that it was the night prior.

Manassa also testified. Upon taking the witness stand, he initially denied that Traylor participated in the crime. After taking a break to speak to his attorney, however, Manassa returned to the court, confirmed that he had accepted a plea offer from the State in exchange for his testimony, and gave his version of events. He testified that Traylor and another man approached him at the corner store seeking to buy marijuana and, knowing that Traylor sold the drug, he took them to Traylor's apartment. Manassa stated that Traylor and the third man rushed into the apartment

4

and forced him at gunpoint to secure the arms and legs of the male victims with duct tape while they ransacked the apartment looking for money and drugs. He further testified that at one point, Traylor took M. B. into the area obscured by the sheet and, although he could not see what transpired, he stated that M. B. wore "a blank expression" upon her return and it was obvious that "something [had] happened."

The State concluded its case with the admission of similar transaction evidence. Specifically, a young woman testified that approximately nine years earlier, she was raped by Traylor. The State tendered a certified copy of Traylor's 2003 guilty plea and conviction on statutory rape and false imprisonment charges related to that incident.

In his defense, Traylor's counsel tendered by stipulation an affidavit of custody and report from the sheriff's office, both reflecting that Traylor was in jail from August 29, 2008 until September 9, 2008, the day before the crime. He also presented two witnesses who purported to have seen him at his mother's house on the night of September 9 and the morning of September 10, although no one could specifically account for his whereabouts during the 6:00 a.m. hour when the crime occurred. And finally, the defense presented the expert testimony of a cognitive psychologist who discussed the weaknesses inherent in eyewitness identifications and explained the

negative impact that stress can have on an individual's ability to accurately recall and retain details of a traumatic event.

The jury convicted Traylor of the charges. This appeal follows.

1. Traylor contends that the evidence that identified him as the perpetrator was insufficient. As to M. B., Traylor argues that his incarceration until the night prior to the attacks renders it impossible for her to have seen him at the corner store before that time. As to J. G., Traylor asserts that, during the years between the robbery and the trial, J. G. consistently said that he had not seen the assailants clearly and could not describe them, and that he only identified Traylor at trial because he was the lone defendant. And as to Manassa, Traylor contends that, after initially testifying that Traylor was not one of the assailants, he reversed himself and identified Traylor only because the prosecutor threatened him with imprisonment if he failed to do so.

But that evidence was presented to the jury and thoroughly explored during cross-examination, and the jurors nonetheless convicted Traylor of the charged offenses. "It is the jury's prerogative to choose what evidence to believe and what to reject. Issues regarding the credibility of witnesses are in the sole province of the jury and only the jury may analyze what weight will be given each witness's testimony." (Citation and punctuation omitted.) *Vaughn v. State*, 301 Ga. App. 391, 392 (687

SE2d 651) (2009); *Powell v. State*, 272 Ga. App. 628, 629 (1) (612 SE2d 916) (2005) (holding that the evidence was sufficient to convict the appellant of rape despite the victim's inability to identify him in court because a second witness positively identified him as the man who entered the victim's home). It follows that the evidence set forth above authorized a rational trier of fact to find Traylor guilty of each element of the crimes charged and is thus sufficient to support the guilty verdict. See OCGA §16-6-1 (a) (1) ("A person commits the offense of rape when he has carnal knowledge of . . . [a] female forcibly and against her will."); OCGA § 16-6-2 (a) (1), (2) ("A person commits the offense of aggravated sodomy when he or she [performs or submits to any sexual act involving the sex organs of one person and the mouth of another] with force and against the will of the other person[.]"); OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon [.]").

2. Traylor next argues that the trial court erred in denying his motion for mistrial and/or in giving an inappropriate curative instruction related to an

identification by J. G.[1] During his testimony, J. G. admitted that he could not give the responding detective a complete description of anyone other than Manassa immediately following the crime; however, he positively identified Traylor from the witness stand as one of the three gunmen and as the individual who followed M. B. in the bathroom and took her behind the sheet dividing the room. During cross-examination, he also stated that he had identified Manassa from a photograph shown to him prior to trial and said that, on at least one other occasion, he had been shown additional photographs and asked if he could identify either of the other assailants. He testified that he tentatively selected one of the photographs, but was not completely certain it was the man involved in the crime.

Traylor's counsel immediately requested that the jury be removed and moved for a mistrial on the ground that counsel had not been informed of any pretrial identification procedure involving J. G. beyond that of his identification of Manassa.

---

[1] In conjunction with this claim of error, Traylor argues that the trial court erred in denying his motion to suppress. In that motion, however, Traylor was seeking to suppress M. B.'s pretrial identification of him and is based upon entirely different grounds. Traylor's appellate brief contains no citation of authority or argument to support an assertion that the trial court erred in denying the motion to suppress and, consequently, this argument will not be considered on appeal. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned."); *Brown v. State*, 302 Ga. App. 272, 274-275 (2) (690 SE2d 907) (2010).

The prosecuting attorney responded that the law enforcement officials responsible for the investigation insisted that, beyond his identification of Manassa, J. G. was never shown additional photographs or a lineup of any kind prior to trial and speculated that he may be confusing this case with another.

Traylor's counsel maintained that a mistrial was warranted because the testimony created an ambiguity that resulted in either a potentially tainted in-court identification of Traylor, or the non-disclosure of potentially exculpatory evidence; either way, he could not conduct an effective cross-examine because he had no photographs from which to question the witness. The trial court denied the motion and instead gave the following instruction:

> The jury will disregard in its entirety [J. G.'s] in-court identification of this defendant. That is stricken from the record. the witness's in-court identification of this defendant is stricken. The jury will disregard.

(a) Traylor argues that the trial court erred in denying the motion for mistrial. "The grant or denial of a mistrial is within the trial court's sound discretion, and the appellate court will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial." (Citation and punctuation omitted.) *Whitaker v. State*, 283 Ga. 521, 524 (3) (661

9

SE2d 557) (2008). Given the ambiguity in the challenged testimony, we cannot say the trial court erred in its determination that any prejudicial effect of J. G.'s testimony, to the extent there was one, could be corrected by the curative instruction. See *Stanley v. State*, 250 Ga. 3 (2) (295 SE2d 315) (1982) ("When prejudicial matter is placed before the jury in a criminal case, the trial judge must decide whether a mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing the testimony from the consideration of the jury under proper instructions.") (citation omitted); see also *Lowe v. State*, 287 Ga. 314, 316 (2) (a) (695 SE2d 623) (2010) ("[T]he Court must presume that the jury followed the trial court's instruction and disregarded the witness' statement.") (citation and punctuation omitted). We find no manifest abuse of discretion.

(b) Traylor contends that the trial court's curative instruction striking the in-court identification of him was inadequate, specifically arguing that it failed to address J. G.'s allegation of a pretrial identification. We note first that J. G. never definitively testified that he had identified Traylor from a photograph; instead, he stated that he recalled being shown photographs and tentatively selected one as possibly depicting the gunman.

Regardless, prior to giving the curative instruction, the trial court offered to enter a stipulation to the effect that a pretrial identification never happened. Traylor's counsel refused the offer, however, insisting that he did not want to be "complicit in anything short of a mistrial." It follows that Traylor cannot now be heard to complain of the court's failure to do so. See *Kitchens v. State*, 289 Ga. 242, 246 (4) (710 SE2d 551) (2011) (holding that trial court did not abuse its discretion in denying appellant's motion for new trial when "trial counsel strategically refuse[d] the trial court's proffer of a curative instruction"); *Sullens v. State*, 239 Ga. 766, 767 (2) (238 SE2d 864) (1977) ("[S]elf-induced error is not grounds for reversal.") (citation and punctuation omitted).

3. Finally, Traylor argues that his trial counsel rendered ineffective assistance in two respects. First, he contends that his attorney was deficient in failing to insist that the trial judge provide clarification to the jury in response to questions asked during deliberation. Second, he asserts that counsel was deficient in failing to present a witness to testify as to his incarceration in the days leading up to the crime.

To prevail on his claim of ineffective assistance, Traylor must prove both that his counsel's performance was deficient and that the deficient performance so prejudiced him that, but for that deficiency, there is a reasonable probability that the

11

outcome of the trial would have been different. *Gaines v. State*, 285 Ga. App. 654, 657 (3) (647 SE2d 357) (2007). We need not analyze both prongs if Traylor fails to satisfy either one. Id. When reviewing a trial court's ruling on a claim of ineffective assistance, we uphold the court's factual findings unless they are clearly erroneous and review its legal conclusions de novo. *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004).

(a) During its deliberations, the jury requested (1) to view the trial transcript of M. B.'s testimony related to her having seen Traylor at the corner store, (2) to read the police report from the day of the crime, and (3) to view a calendar from August and September 2008. The judge, the prosecutor, and Traylor's counsel were all in agreement that each request should be denied, and that the jury should be instructed to use their collective memories and notes to remember the evidence. After being so instructed, one of the jurors asked if he could view a calendar independently and, after being informed that he could not, stated that he "[didn't] remember specific days during that timeframe when [Traylor] was in jail."

Traylor argues that his counsel's failure to request that the judge direct the jury's attention to the stipulated exhibits tendered during the trial—thus reminding

12

them of the dates of his incarceration—constituted deficient performance.[2] But we first note that counsel stated at the time that he tendered the documents that they would "be going back to the [jurors] for their consideration," and further emphasized during closing argument that they were "critical piece[s] of evidence" that established Traylor's alibi and were going back to the jury room for the jurors to review and discuss during deliberations.

Regardless, during the motion for new trial hearing, the trial judge stated explicitly that "[t]here is nothing [counsel] could have said to me to get me to do anything else in response to [the jury's] questions." And "[i]t has long been the law in Georgia that a judgment will not be reversed because the trial court declines to aid the jury in recalling the evidence[.]" *Young v. State*, 246 Ga. App. 651, 653 (2) (541 SE2d 670) (2000). See *Byrd v. State*, 237 Ga. 781, 783 (1) (229 SE2d 631) (1976) (A trial court may, in its discretion, refuse a jury's request to rehear certain parts of the evidence.). It follows that counsel's failure request that the judge direct the jury as suggested by Traylor does not constitute ineffective assistance, because it

_____

[2] Traylor also contends that the trial court erred in failing to sua sponte direct the jury's attention to the exhibits tendered at trial. He failed to support this enumeration of error with citation of authority or argument, however, and it is therefore deemed abandoned. See Court of Appeals Rule 25 (c) (2); *Brown,* 302 Ga. App. at 274-275 (2).

13

affirmatively appears from the record that the trial court in its discretion would have denied such a request. See *Head v. State*, 288 Ga. App. 205, 208 (2) (653 SE2d 540) (2007) ("Failure to pursue a futile motion does not constitute ineffective assistance.") (punctuation and footnote omitted); see also *Adorno v. State*, 314 Ga. App. 509, 515 (3) (724 SE2d 816) (2012).

(b) Traylor asserts that he was denied effective assistance of counsel because he tendered by stipulation the documents reflecting Traylor's incarceration rather than calling a witness to testify to that fact. During the motion for new trial hearing, however, Traylor failed to question counsel about the motives behind that decision and, consequently, it is presumed strategic and will not support a claim for ineffective assistance. See *Patel v. State*, 279 Ga. 750, 754 (c) (620 SE2d 343) (2005) ("In the absence of testimony to the contrary, counsel's actions are presumed strategic.") (citation and punctuation omitted); see also *Futch v. State*, 286 Ga. 378, 383 (2) (c) (687 SE2d 805) (2010); *Carlos v. State*, 292 Ga. App. 419, 422 (2) (c) (664 SE2d 808) (2008).

*Judgment affirmed. Dillard and McFadden, JJ., concur*.