## A02A1241. WILSON v. THE STATE.
(570 SE2d 416)

RUFFIN, Judge.

A jury found Terrion Wilson guilty of armed robbery.[1] Wilson appeals, challenging the sufficiency of the evidence and asserting that he received ineffective assistance of counsel. For reasons that follow, we affirm.

1. Viewed in favor of the jury's verdict,[2] the evidence shows that, when the robbery occurred, the victim, R. C. Green, was driving home from his job at Tift County High School. Green testified:

I was coming home and right on the corner . . . where I turn to go down to my house I slowed down real slow and my door came open. And I recognized Terrion [Wilson] who scuffled with me and pulled me out of the truck. He cut me on my hand with a knife. . . . And after I got out of the truck he

---

[11] See *Hill v. State*, 250 Ga. App. 897, 905 (4) (553 SE2d 289) (2001).
[12] See id.
[1] Wilson was also indicted for aggravated assault, but the trial court granted him a directed verdict on this charge.
[2] See *Swanger v. State*, 251 Ga. App. 182 (554 SE2d 207) (2001).

snatched my pocketbook out and ran across the railroad. That's the last time I saw him.

According to Green, although he did not know Wilson's name when the robbery occurred, he recognized Wilson's face. Green lived down the street from Wilson's mother and frequently saw Wilson walking down the street.

When Green first reported the robbery, he gave a statement to Captain Brannen of the Tift County Sheriff's Department. Green evidently told Brannen that "he did not know who robbed him." At trial, however, Green disputed making this statement. The statement also reflected that Green described the robber as tall and heavy with a mustache. Again, however, Green denied providing that description of his assailant. According to Green, he told Brannen that he did not know the robber's name but recognized the face, and he described the assailant as having a heavy beard.

The day after the robbery, a student approached Green at school and said, "I heard you got robbed last night. . . . [O]ld Terrion robbed you, didn't he?" According to Green, this was when he learned the robber's name. Later that day, Wilson went to Green's home and told Green that he was not the robber.

The next day, Green went to the magistrate's court to swear out a warrant for Wilson's arrest. The magistrate referred Green to the Tift County Sheriff's Department. Although it was Brannen's case, he was off duty that day, and another investigator, Ray Merritt, prepared a photo array containing Wilson's photograph. Merritt testified that he showed the array to Green and that Green quickly identified Wilson as the person who robbed him. At trial, Green again positively identified Wilson as the robber. Wilson did not testify or present any witnesses in his defense.

On appeal, Wilson asserts that the evidence was insufficient because Green's trial testimony "was rife with contradiction and inconsistency." Specifically, Wilson points to Green's testimony that he recognized Wilson's face when he was robbed, and he knew where Wilson and Wilson's mother lived, yet he initially told Captain Brannen that he did not know who robbed him. Such inconsistencies, however, do not render the evidence insufficient. This is because,

[o]n appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and [Wilson] no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v.*

*Virginia.*[3] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[4]

The jury obviously resolved the inconsistencies in Green's testimony, and the resulting credibility issues, in favor of finding Wilson guilty. We are not authorized to revisit such issues on appeal, and the evidence presented, though inconsistent, is sufficient to meet the *Jackson* standard.[5]

2. Wilson also asserts that the trial court erred in denying his motion for new trial on the ground that he received ineffective assistance from his trial counsel. We disagree.

For Wilson to prevail on this claim, he "must show that trial counsel performed deficiently and that the result of the trial would have been different but for the deficiency."[6] Furthermore, "[t]here is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy."[7] We will affirm the trial court's decision that Wilson was afforded effective assistance unless that determination is clearly erroneous.[8]

(a) Wilson first argues that counsel was ineffective because he failed to call an alibi witness at trial. The record shows that the trial court conducted two evidentiary hearings on Wilson's motion for new trial. At the first hearing, Wilson was represented by new appellate counsel. Wilson's trial attorney, Kenneth Hilyer, testified at the first hearing, but was never asked about his decision to not present an alibi witness. Wilson also testified at the first hearing, and he, too, never mentioned an alibi witness or Hilyer's failure to call the witness.

At the second hearing, held over ten months later, Wilson was represented by yet another attorney.[9] At this hearing, Wilson testified for the first time that, at the time of the robbery, he was at a pool hall with his cousin, Jimmy Alexander, who also testified and corrob-

---

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Swanger,* supra.

[5] See id.

[6] (Punctuation omitted.) *Phillips v. State,* 233 Ga. App. 557 (504 SE2d 762) (1998).

[7] (Punctuation omitted.) *Beck v. State,* 250 Ga. App. 654, 662 (8) (551 SE2d 68) (2001).

[8] See id. at 661-662.

[9] It appears that, after Wilson was appointed different appellate counsel, the court granted his motion to present additional claims and evidence concerning his claim of ineffective assistance of counsel.

orated Wilson's story. According to Wilson, he told Hilyer about his alibi, but Hilyer responded that he "wouldn't need [any] witnesses."

In contrast, Hilyer testified at the second hearing that he did not recall Wilson mentioning the name of an alibi witness. Specifically, Hilyer stated that he recalled asking Wilson if there was anyone who could corroborate the alibi, and Wilson "didn't advise [him] of any witnesses." Hilyer further stated that he discussed trial strategy with Wilson and that if he had "known of an alibi witness, [he] certainly would have . . . explored that." Finally, Investigator Merritt testified at the hearing that Wilson gave a custodial statement in which he denied committing the robbery; Wilson never mentioned an alibi or an alibi witness to Merritt.

In light of this conflicting testimony, the trial court did not clearly err in denying Wilson's claim on this ground. The court was faced with a credibility determination, and its resolution of that issue was not clearly erroneous.[10]

(b) Wilson also asserts that trial counsel was ineffective because he failed to call Captain Brannen to impeach Green's trial testimony that conflicted with his witness statement. At the second new trial hearing, Brannen stated that he wrote Green's witness statement and that he read each sentence back to Green to ensure that it was accurate. Wilson claims that Brannen's testimony would have impeached Green's trial testimony that he knew who robbed him and the conflicting description he gave of the robber. However, the transcript shows that Hilyer extensively cross-examined Green about these inconsistencies at trial. Indeed, at the new trial hearing, Wilson's second appellate counsel remarked that he "thought [Hilyer] did a very good cross-examination of Mr. Green." Hilyer testified that he did not call Brannen as an impeachment witness because after Green's cross-examination testimony, "[he] didn't feel the need to. The point, [he] felt, had been made."

The decision of which witnesses to call is a matter of trial strategy that we will generally not interfere with on appeal.[11] In this case, Hilyer's testimony reveals that he discussed trial strategy with Wilson and decided not to call Brannen because he believed he had already successfully impeached Green's trial testimony. "This is the essence of a tactical decision and does not amount to ineffective assistance of counsel."[12]

---

[10] See *Beck*, supra. Compare *Richardson v. State*, 189 Ga. App. 113 (375 SE2d 59) (1988) (trial counsel did not testify at new trial hearing, and undisputed evidence showed that defendant told counsel about alibi witnesses).

[11] See *Phillips*, supra at 559.

[12] *Lewis v. State*, 249 Ga. App. 812, 817 (5) (c) (549 SE2d 732) (2001) (tactical decision not to challenge victim on omission from his statement to police). See also *Williams v. State*, 247 Ga. App. 99, 101 (2) (543 SE2d 408) (2000) (failure to call witnesses to bolster impeachment of victim concerning her initial statements about charged offenses).

.·· f

(c) Finally, Wilson contends that counsel was ineffective because he failed to object to evidence of Wilson's prior convictions for recidivist purposes at sentencing. Wilson argues that counsel should have objected because the convictions arose from guilty pleas and the State failed to establish that he entered the pleas freely and voluntarily.

It is undisputed that the State timely notified Wilson of its intent to use the prior convictions at sentencing. Trial counsel testified that he discussed the pleas with Wilson, and Wilson gave no indication of a problem with any of the convictions. According to counsel, he did not object to the court's admission of the convictions because he did not see any legal basis to support an objection. Although there is no evidence that the pleas were knowing and voluntary, copies of the pleas show that Wilson was represented by counsel, and Wilson "cites to no evidence in his appellate brief that indicates that the pleas were anything other than knowing and voluntary."[13] Thus, Wilson has not shown that he was prejudiced by counsel's failure to object, and this contention is without merit.[14]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED AUGUST 21, 2002.

*Robert D. Bryan*, for appellant.
*C. Paul Bowden, District Attorney*, for appellee.

---

[13] *Wynn v. State*, 228 Ga. App. 124, 128 (3) (a) (491 SE2d 149) (1997).
[14] See id.