A07A1159. CROSBY v. THE STATE.

(650 SE2d 775)

BERNES, Judge.

A jury convicted James Curtis Crosby of three counts of theft by shoplifting. Following the denial of his motion for new trial, Crosby appeals, contending that there was insufficient evidence to convict him of the charged offenses; that the trial court should have granted his motion to sever the three counts; and that the trial court erred in limiting the cross-examination of two state witnesses. For the reasons discussed below, we affirm.

1. In reviewing Crosby's conviction, we construe the evidence in the light most favorable to the verdict of guilty. *Adams v. State*, 284 Ga. App. 534, 535 (1) (644 SE2d 426) (2007).

> As an appellate court, we do not weigh the evidence, judge the credibility of witnesses, or resolve conflicts in trial testimony when the sufficiency of the evidence is challenged. Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Id.

So viewed, the evidence adduced at trial reflects that Crosby was involved in three shoplifting incidents at three stores located in close proximity to one another on Grayson Highway in Gwinnett County. All three stores — an Eckerd Drugs, a Blockbuster, and a Kroger, respectively — were located near Crosby's residence. The first two shoplifting incidents occurred on October 1, 2004, whereas the third incident occurred on October 14, 2004.

*The October 1, 2004 Incidents.* On the evening of October 1, 2004, Crosby entered the Eckerd Drugs on Grayson Highway. An assistant manager recognized Crosby because he had previously stolen an item from the store. The assistant manager notified the store manager, who followed Crosby down an aisle. As the manager approached Crosby, she noticed three empty cologne boxes on a rack and observed that Crosby was standing nearby attempting to conceal the cologne bottles under his shirt. The cologne boxes had security strips on them that would sound an alarm if they were taken out of the store, but the cologne bottles did not. After observing Crosby, the manager said, "I know that you are not going to take that" and indicated to Crosby that

she was going to call the police department. Crosby walked up front to the register and placed the three cologne bottles that had been under his shirt on the counter. He attempted to present a receipt, but the receipt was from Wal-Mart. While the manager called the police department, Crosby left the store.

Law enforcement arrived at the Eckerd Drugs and obtained a physical description of Crosby from the manager. After canvassing the area, two officers quickly located Crosby in a parking lot about one half of a mile from the Eckerd riding a bicycle and carrying a plastic bag. When the officers approached him, Crosby said, "I guess they called the police on me." He admitted that he had just been at Eckerd, but denied that he had been attempting to steal the cologne. As Crosby spoke with the officers, the plastic bag he was carrying broke, and four video games fell out. The games were in their original boxes with security devices still on them and were stamped with an address for a Blockbuster on Grayson Highway, located approximately one quarter of a mile from the Eckerd. Crosby told the officers that he had purchased the games "on the street in Duluth."

After arresting Crosby for shoplifting at Eckerd, the officers took the video games to the Blockbuster store listed on the boxes and showed them to the store manager. The manager confirmed that the games were from his store. A computer check revealed that the games were still listed as available for renting. Additionally, the store manager remembered an individual matching Crosby's description leaving the store approximately 20 minutes before the officers had arrived. Crosby had come to the counter and had attempted to rent two games, but was not permitted to rent them because he did not have a valid membership. Crosby then had told the manager that he was going to go down the street and get his sister's membership card and would be back shortly. At that point, Crosby had left the store. No security detector went off, but the manager explained that would-be thieves could avoid sounding the detector if they surreptitiously held store items in a particular manner as they exited.

*The October 14, 2004 Incident.* In the same shopping center as the Blockbuster is a Kroger grocery store. On October 14, 2004, Crosby went inside the Kroger, appeared to do some shopping, and then stood in the checkout lane with a 24-pack of beer and three packs of razor blades. Without paying for the items, Crosby then backed out of the line, passed the cash registers, and walked out of the first set of exit doors into the vestibule area. An undercover security guard who had observed the entire incident stopped Crosby before he could exit the second set of doors into the parking lot. Crosby told the officer that he had forgotten his checkbook and was going to get it from his sister who was in a car outside the store. The officer escorted Crosby back into the store and arrested him.

Crosby subsequently was indicted on three counts of theft by shoplifting under OCGA § 16-8-14. That statute provides that

[a] person commits the offense of theft by shoplifting when he . . . , with the intent of appropriating merchandise to his own use without paying for the same or to deprive the owner of possession thereof or of the value thereof, in whole or in part, . . . [c]onceals or takes possession of the goods or merchandise of any store or retail establishment.

OCGA § 16-8-14 (a) (1). Count 1 of the indictment averred that Crosby took unlawful possession of the three cologne bottles owned by Eckerd Drugs; Count 2 averred that he took unlawful possession of the four video games owned by Blockbuster; and Count 3 averred that he took unlawful possession of the beer and razor blades owned by Kroger. Crosby was tried before a jury and convicted on all three counts, and the trial court thereafter denied his motion for new trial.

On appeal, Crosby contends that there was insufficient evidence to convict him of any of the three counts of theft by shoplifting. We disagree.

As to Count 1, the Eckerd assistant manager and store manager both testified to what they observed as set out above, and their testimony provided sufficient evidence that Crosby concealed the cologne bottles with no intent to pay for them. This testimony was enough to sustain Crosby's conviction for theft by shoplifting, even though Crosby never took the cologne outside the store. See *Simmons v. State*, 278 Ga. App. 372, 372-373 (1) (629 SE2d 86) (2006) (sufficient evidence supported shoplifting conviction where store employees observed defendant with alcohol bottles stuffed in his pants, and defendant was stopped before exiting); *Racquemore v. State*, 204 Ga. App. 88 (1) (418 SE2d 448) (1992) (sufficient evidence supported shoplifting conviction where defendant concealed items in his clothes but placed them back on the shelf when store employees started to follow him).

Crosby argues that the evidence presented by the state failed to exclude every reasonable hypothesis of his innocence. His argument is misguided, however, because "the 'reasonable hypothesis' rule relied upon by [Crosby], codified in OCGA § 24-4-6, applies only when the evidence against the accused was entirely circumstantial." (Citation, punctuation and emphasis omitted.) *Meeks v. State*, 281 Ga. App. 334, 337 (636 SE2d 77) (2006). Here, there was direct evidence supporting Crosby's conviction on Count 1, namely, the eyewitness testimony of the Eckerd manager that Crosby had the cologne bottles

under his shirt. The reasonable hypothesis rule thus is not applicable to Count 1. See *Fitzpatrick v. State*, 271 Ga. App. 804, 805-806 (611 SE2d 95) (2005).

As to Count 2, one of the officers who discovered Crosby with the Blockbuster video games testified, as did the store manager who had observed Crosby in the Blockbuster store earlier that day. This testimony established that the video games had been taken from the store without being purchased; that Crosby entered the Blockbuster and left without making a purchase; and that Crosby was observed with the video games, still in their boxes with security devices attached, on his person approximately 20 minutes after leaving Blockbuster and in conjunction with his apprehension for shoplifting at the Eckerd. Although no one saw Crosby with the video games hidden on his person inside the Blockbuster or saw him exit the store with the games, the testimony of the officer and store manager provided sufficient circumstantial evidence to exclude every reasonable hypothesis of Crosby's innocence and thus to authorize his shoplifting conviction on Count 2. See *Benn v. State*, 244 Ga. App. 67, 68 (1) (535 SE2d 28) (2000) (evidence that defendant had been observed in the store, that jackets in the store were discovered missing, and that defendant was observed outside the store with the jackets was sufficient to sustain shoplifting conviction); *Agony v. State*, 226 Ga. App. 330, 332 (2) (486 SE2d 625) (1997) ("[U]nexplained recent possession of stolen goods supports an inference that the accused committed the theft.").

Crosby cites to *Calhoun v. State*, 213 Ga. App. 375 (444 SE2d 405) (1994) in support of his position that the evidence was insufficient as to Count 2. In *Calhoun*, we reversed a shoplifting conviction for insufficient evidence because the state had relied upon hearsay evidence, which had no probative value. See id. at 376-377 (4) (a). In contrast, the testimony of the officer and the Blockbuster store manager was based on personal knowledge and thus was competent evidence with probative value. Hence, *Calhoun* is distinguishable and provides no basis for reversal. See *Russau v. State*, 250 Ga. App. 717, 719 (1) (552 SE2d 890) (2001).

Finally, as to Count 3, the undercover investigator working for Kroger testified about how he observed Crosby pass the cash registers and exit through the first set of doors carrying the beer and razors without having paid for them. As was true with respect to Count 1, this eyewitness testimony was direct evidence sufficient to authorize Crosby's conviction on Count 3. See *Simmons*, 278 Ga. App. at 372-373 (1); *Racquemore*, 204 Ga. App. at 88 (1).

For these combined reasons, Crosby has failed to point to any basis for reversing his shoplifting convictions. While Crosby testified to an alternative version of events at trial, "[r]esolving evidentiary

conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court." (Citation and punctuation omitted.) *Meeks*, 281 Ga. App. at 336. Accordingly, we conclude that the evidence was sufficient to allow a rational trier of fact to conclude that Crosby was guilty beyond a reasonable doubt of all three counts of theft by shoplifting. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Crosby next argues that the trial court erred in denying his motion for severance of the three counts because the alleged crimes were joined solely because they were similar in character. We cannot agree.

> [A] defendant has a right to severance where the offenses are joined solely on the ground that they are of the same or similar character because of the great risk of prejudice from a joint disposition of unrelated charges. However, where the joinder is based upon the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, severance lies within the sound discretion of the trial judge since the facts in each case are likely to be unique. In determining whether severance is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense, the court should consider whether in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

(Citations and punctuation omitted.) *Coats v. State*, 234 Ga. 659, 662 (4) (217 SE2d 260) (1975).

Here, all three of the shoplifting incidents occurred in commercial establishments in close proximity to one another on the same road. All three were near Crosby's residence. And, all three involved Crosby posing as an ordinary customer and at some point approaching the checkout line or register as part of an effort to either distract employees or make his actions appear legitimate in some manner. Furthermore, the Eckerd and Blockbuster shoplifting incidents occurred on the same day within an hour of one another. In turn, the Blockbuster and Kroger shoplifting incidents both involved Crosby referring to his sister as part of his criminal scheme. Finally, the evidence of the three offenses was not complex, and there is nothing in the record that would indicate that the jury could not distinguish the evidence or apply the law to each offense separately. Under these circumstances, the trial court did not abuse its discretion in denying Crosby's motion for severance. See *Fields v. State*, 283 Ga. App. 208,

210 (1) (a) (641 SE2d 218) (2007) (trial court did not abuse discretion in denying severance motion, where offenses occurred in the same area in a short period of time and involved the defendant following the same pattern of conduct after entering the stores to carry out the offenses); *Felder v. State*, 260 Ga. App. 27, 29 (2) (579 SE2d 28) (2003) (trial court did not abuse discretion in denying severance motion, where the offenses occurred within two months of each other and involved retail businesses near the defendant's residence).

3. Crosby asserts that the trial court improperly limited his cross-examination of two state witnesses, the Eckerd manager and the Blockbuster manager.

> Although each party has a right to a thorough and sifting cross-examination of the other party's witnesses, such right is not unfettered, and a trial court may restrict the scope of cross-examination to the issues, and its exercise of discretion will not be interfered with on appellate review unless manifestly abused.

(Punctuation and footnote omitted.) *Howell v. State*, 278 Ga. App. 634, 639 (3) (629 SE2d 398) (2006). We discern no manifest abuse of discretion in this case.

(a) *The Eckerd Manager.* Crosby contends that the trial court manifestly abused its discretion by preventing him from cross-examining the Eckerd manager about the manner in which the store determined how much loss it incurs as a result of shoplifting and the rate of loss at that particular store. Crosby's contention notwithstanding, the record reflects that he was able to ask the Eckerd manager multiple questions about how losses were determined for that store as well as the rate of loss on a weekly and monthly basis. The state raised an objection, which was sustained by the trial court, only after Crosby had gone through several questions about the loss issue and then asked the manager what the highest loss was that the store had ever incurred. Thus, Crosby was able to raise the loss issue before the jury, but was prevented by the trial court from turning what clearly was at best a peripheral issue into a central one. Under these circumstances, the trial court did not manifestly abuse its discretion. See *Holloway v. State*, 283 Ga. App. 823, 825 (643 SE2d 286) (2007).

(b) *The Blockbuster Manager.* Crosby similarly contends that the trial court manifestly abused its discretion in preventing him from cross-examining the Blockbuster manager about the general rate of theft at his store. Crosby argues that this issue was relevant to the case because if there was a high rate of theft at the store, it would have bolstered his argument that someone else took the video games at issue and that he merely purchased the games from another person.

Even if the Blockbuster had a high rate of theft, however, it "had no bearing on the identity of the person" who committed this particular theft. *Skaggs v. State*, 278 Ga. 19, 21-22 (3) (596 SE2d 159) (2004) (generalized statistical evidence concerning fatal traumatic brain injuries was irrelevant to whether the defendant committed the particular homicide at issue). As to the ultimate issue of whether Crosby or a third party stole the video games, evidence as to the rate of theft at the Blockbuster would simply offer no assistance. In any event, even assuming that the evidence as to the rate of theft was relevant, it was only marginally so. The trial court thus acted within its discretion in preventing questioning on this issue. See *Holloway*, 283 Ga. App. at 825; *Howell*, 278 Ga. App. at 639 (3).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 6, 2007.

*Lucas O. Harsh*, for appellant.

*Daniel J. Porter, District Attorney, Mya Whitmore-Hinton, Assistant District Attorney*, for appellee.