**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 8, 2013**

# In the Court of Appeals of Georgia

A12A2456. LITTLEJOHN v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Daniel Kirk Littlejohn was convicted of burglary (OCGA § 16-7-1 (a) (2009)), theft by taking (OCGA § 16-8-2), and second degree criminal damage to property (OCGA § 16-7-23 (a) (1)). Littlejohn filed a motion for new trial, which the trial court denied. On appeal, Littlejohn contends that the trial court erred (i) in denying his *Batson*[1] challenge; (ii) in intimating an opinion as to the credibility of a witness and his guilt; (iii) in admitting similar transaction evidence without conducting a Uniform Superior Court Rule ("USCR") 31.3 hearing, and; (iv) in restricting the scope of his cross-examination of two witnesses. In addition,

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 97-98 (106 SC 1712, 90 LE2d 69) (1986).

Littlejohn contends that (v) his trial counsel provided ineffective assistance. We discern no error and affirm.

Viewed in the light most favorable to the verdict,[2] the trial evidence shows that on the evening of August 6, 2007, the victims discovered that their residence in Monroe County had been burglarized. The residence was located in a rural area near the county line abutting the city of Macon. The victims observed that the perpetrator had gained entry by breaking through the steel gate and kicking in the side door of the residence. The victims noticed that the residence had been ransacked and numerous items had been stolen during the burglary, including a computer, a printer, a PlayStation II videogame system, several guns, a digital camera, a video camera, a crossbow, a chainsaw, two weed eaters, a small motorcycle, and a drug recognition expert ("DRE") bag that the male victim had obtained during his law enforcement training as a POST certified City of Macon police officer. The physical damage sustained to the residence as a result of the burglary exceeded $500. The total value of the victims' loss for the damaged and stolen items was $4,397.92.

The victims reported the burglary to the local sheriff's office, and officers were dispatched to investigate the matter. An officer took photographs of the scene. The

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2

officer also recovered a partial shoe print and a partial fingerprint, but neither print was sufficient to identify a suspect.

One day after the burglary incident, Littlejohn contacted his acquaintance, and attempted to sell him several of the victims' stolen items. Littlejohn was unaware that his acquaintance was a confidential informant who had supplied information to local law enforcement officers on several prior occasions. The informant testified that Littlejohn, who he identified by his alias "Quiet Man," drove to the informant's residence in Macon and showed the informant the stolen items. When the informant observed a police book with a badge inscription among the stolen items, the informant refused the stolen items in fear that the police may have been involved. In efforts to reassure the informant, Littlejohn advised that the items had been taken from a location in Monroe County.

After Littlejohn left the residence, the informant contacted an investigator with the Monroe County Sheriff's Department and advised that he had seen some of the items that had been stolen during the burglary. The investigator had known the informant for almost twenty-four years and had used the informant to obtain information in several prior investigations. The investigator stated that the informant had never previously provided false information to him, the informant's information

3

had always been accurate, and the informant's information had led to numerous arrests and convictions.

The informant agreed to assist the investigator with the burglary investigation, and made arrangements with Littlejohn to purchase the stolen items. After purchasing the stolen items from Littlejohn, the informant turned the items over to the investigator. The informant also gave the investigator a description of the truck that Littlejohn had been driving.

The investigator requested the informant's additional assistance in locating Littlejohn and the truck. The informant made arrangements to meet Littlejohn at a designated location. The informant notified the investigator of the arrangements, and the investigator traveled to the designated location in accordance with the plan. After observing the truck matching the informant's description, the investigator called local officers for backup assistance.

The investigator observed Littlejohn enter the truck and drive away from the location. The investigator followed Littlejohn and attempted to conduct a stop. When the investigator activated his patrol lights, Littlejohn suddenly accelerated and led the investigator on a high speed chase. During the course of the chase, Littlejohn's truck collided with another patrol vehicle. Littlejohn was ejected from the truck and

attempted to crawl away from the scene. Littlejohn was apprehended, arrested, and charged with the offenses related to the burglary incident.

During the ensuing trial, the State introduced Littlejohn's prior burglary conviction as similar transaction evidence. An investigator testified that Littlejohn had been involved in the burglary of another residence located in the rural area of Monroe County near the county line abutting the city of Macon. In that incident, Littlejohn had gained entry into the residence by breaking through the back door. After stealing several valuable items from the residence, Littlejohn attempted to sell the stolen items to a pawn shop and to his acquaintances. Following his arrest, Littlejohn executed a waiver of his rights and gave the investigator a statement admitting that he had committed that burglary offense.

At the conclusion of the trial in the instant case, the jury returned a verdict finding Littlejohn guilty of the charged offenses.

1. Littlejohn first contends that the trial court erred in denying his *Batson* challenge since the State used its peremptory strikes in a discriminatory manner.

The record shows that after the jury was selected, trial counsel initially confirmed that the composition of the jury appeared to be correct. The trial court then excused the jury pool. Before the jury was sworn, however, trial counsel announced

5

that he had a *Batson* motion that he wanted to make on the record. Trial counsel argued the basis for his motion, noting that the State had exercised its strikes as to jurors 3, 8, 67, 69, 70, and 85, all of whom were African-Americans. Trial counsel later acknowledged that the State had a valid basis for striking juror 69 since his occupation as a counselor for inmates may have caused concern for the State. Trial counsel nevertheless insisted that the State's exercise of strikes against the other five jurors was discriminatory. The trial court directed the prosecutor to explain the basis for her strikes.

After the prosecutor gave her explanations, the trial court denied the *Batson* motion. The trial court ruled that Littlejohn's challenge was untimely since it was not raised until after the jury had been released from the courtroom. The trial court further found that the prosecutor had offered race-neutral explanations for its strikes and that no intentional discrimination had been shown.

Thereafter, the trial proceedings adjourned and resumed two days later. After handling several pretrial matters, the trial court brought the impaneled jury into the courtroom and administered the jury oath.

As an initial matter, we note that the trial court erred in ruling that Littlejohn's *Batson* challenge was untimely. A *Batson* challenge is untimely when it is made after

6

the jury has been sworn. See *Laney v. State*, 271 Ga. 194, 195 (3) (515 SE2d 610) (1999) (ruling that a *Batson* challenge should be made before the jury is sworn); *Barrow v. State*, 269 Ga. App. 635, 639 (6) (605 SE2d 67) (2004) (ruling that a *Batson* challenge made after the jury has been impaneled and sworn is untimely). This Court has previously held that a *Batson* challenge is timely when made after the jury is selected but before it is sworn. See *Wright v. State*, 186 Ga. App. 104, 105 (1) (366 SE2d 420) (1988). Since Littlejohn made his *Batson* challenge before the jury was sworn, it was timely. Id.

> The analysis of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent.

(Citation and punctuation omitted.) *Toomer v. State*, 292 Ga. 49, 52 (2) (a) (734 SE2d 333) (2012).

Since the trial court directed the State to explain its strikes, the preliminary question of whether Littlejohn had established a prima facie case of discrimination is moot. See *Drane v. State*, 271 Ga. 849, 851 (1), n. 3 (523 SE2d 301) (1999) (ruling

7

that the preliminary finding as to prima facie discrimination is moot once the proponent gives reasons for its strikes and the trial court makes its findings); *Odom v. State*, 241 Ga. App. 361, 363 (2) (526 SE2d 646) (1999) (holding that because the trial court ruled upon the ultimate question of intentional discrimination, the preliminary issue as to the prima facie case of discrimination was rendered moot). Accordingly, the State's explanations must be examined. See *Odom*, supra, 241 Ga. App. at 363 (2).

At step two, the proponent of the strike need only articulate a facially race-neutral reason for the strike. Step two does not demand an explanation that is persuasive, or even plausible. At this second step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. . . . If the proponent of the strike carries its burden by providing a race-neutral explanation for the peremptory strike, the trial court must advance to step three of the *Batson* analysis and decide whether the opponent of the strike has proven the proponent's discriminatory intent in light of all the circumstances that bear upon the issue of racial animosity. This involves an evaluation of the credibility of the strike's proponent, which in turn may depend on the specificity and case-relatedness of the explanation for the strike given at step two. . . . At the third stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. . .

8

. [W]e look to our State's trial judges to ferret out and eliminate invidious discrimination in the jury selection process. But they should do so using the well-defined framework set forth in *Batson . . .* and the similar decisions of this Court.

(Citations and punctuation omitted.) *Toomer*, supra, 292 Ga. at 54-55 (2) (b). Bearing these principles in mind, we turn to address the prosecutor's explanations for the strikes.

(a) The prosecutor stated that she struck jurors 3 and 8 because they were unemployed. The prosecutor's explanation presented a justifiable and race-neutral basis, and thus, the trial court's findings as to these strikes were proper. See *Ware v. State*, 258 Ga. App. 706, 708 (2) (574 SE2d 898) (2002).

(b) The prosecutor said that she struck juror 67 because he nodded his head when she asked whether he could listen to and fairly consider the testimony of a confidential informant. She claimed that based upon juror 67's nodding of his head, she believed that he would have a problem judging the confidential informant's testimony fairly. The prosecutor also explained that she struck juror 70 because the juror did not make eye contact with her, she felt that the juror was more inclined towards the defense position, and she did not feel any interpersonal interaction with

9

the juror. The trial court was authorized to conclude that the prosecutor had offered race-neutral explanations for these strikes.

Significantly, there is no voir dire transcript in the record, and the portion of the trial transcript reflecting the prosecutor's explanations and the trial court's rulings did not preserve the jurors' actions and demeanors. Nevertheless, "[t]here is no requirement that the State's racially neutral explanation for its use of peremptory strikes be supported by a transcript of voir dire." (Citations and punctuation omitted.) *Smith v. State*, 264 Ga. 449, 453 (4) (448 SE2d 179) (1994); see also *Burgess v. State*, 194 Ga. App. 179, 180 (390 SE2d 92) (1990). The trial court had the opportunity to observe the jurors' actions during the voir dire proceedings. In the absence of evidence reflecting that the trial court's findings were clearly erroneous, we must affirm the trial court's determination that the prosecutor's explanations were race-neutral. See *Toomer*, supra, 292 Ga. at 57-58 (2) (d) (affirming the trial court's ruling that appellant failed to carry his burden to prove discriminatory intent in the prosecutor's strikes based upon the prospective jurors' demeanor since the trial court observed the challenged jurors' demeanor during voir dire); *Smith*, supra, 264 Ga. at 451 (1) ("[U]nder *Batson*, a trial court's finding must be affirmed unless it is clearly erroneous.") (citation and punctuation omitted).

10

(c) Lastly, the prosecutor stated that she struck juror 85 because his hair was in a ponytail. The trial court was authorized to find that the prosecutor's explanation was race-neutral. "[T]he proponent of the strike need not offer an explanation that is concrete, tangible, or specific. The explanation need not even be case-related. The explanation for the strike only needs to be facially race-neutral."[3] (Citation and punctuation omitted.) *Toomer*, supra, 292 Ga. at 54 (2) (b). Since the growing of long, unkempt hair is not a characteristic that is peculiar to any race, the trial court was authorized to find that the prosecutor had offered a race-neutral explanation for its strike. See *Purkett v. Elem*, 514 U.S. 765, 769 (115 SC 1769, 131 LE2d 834) (1995) (ruling that a prosecutor's explanation that he struck a juror because he had long, curly, and unkempt hair was sufficient to survive the second prong of the *Batson* analysis).

---

[3] We note that Littlejohn cites to *George v. State*, 263 Ga. App. 541, 544 (2) (588 SE2d 312) (2003), which reversed the trial court's denial of the defendant's *Batson* challenge based upon a ruling that the reasons articulated for strikes must be both racially neutral and related to the particular case. In *Toomer*, supra, 292 Ga. at 54 (2) (b), the Georgia Supreme Court recently explained that the reasons articulated for strikes need not be case-related, and need only be facially race-neutral. The *Toomer* decision expressly disapproved any Georgia case that rules to the contrary. Accordingly, to the extent that the decision in *George* was based upon a standard that has been disapproved, it cannot be applied here.

11

After the prosecutor provided race-neutral explanations for its strikes, Littlejohn failed to prove that the prosecutor's strike were motivated by discriminatory intent. Consequently, Littlejohn's *Batson* challenge fails to present a basis for reversal.

2. Littlejohn further argues that the trial court erred in intimating an opinion as to the credibility of a witness and his guilt, in violation of OCGA § 17-8-57. In this regard, Littlejohn challenges the trial court's interjection of questions to the investigator as to whether the investigator had checked the reliability of the informant's information, and whether the investigator trusted the informant's information. Littlejohn also challenges the trial court's questions to the informant as to which items he had purchased from Littlejohn and his inability to recall every stolen item that he had purchased. Although Littlejohn's counsel did not object to the trial court's questions during the trial, we must review this contention of error to determine whether there was a violation of OCGA § 17-8-57 that constituted plain error. *Ledford v. State*, 289 Ga. 70, 85 (14) (709 SE2d 239) (2011) (ruling that "[e]ven where a defendant has failed to object or move for a mistrial in response to an alleged comment on the evidence by the trial court in violation of OCGA §

12

17-8-57, this Court nevertheless will examine the claim for plain error.") (citations and punctuation omitted).

OCGA § 17-8- 57 provides that

[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.

Nevertheless, "[i]t is well settled that a trial court may propound a clarifying question in order to develop the truth of a case" without violating this statute. (Citation and punctuation omitted.) *Putman v. State*, 270 Ga. App. 45, 47 (4) (606 SE2d 50) (2004). The extent of such questioning is a matter of the trial court's discretion, as long as the questioning does not intimate an opinion as to what has or has not been proved or as to the guilt of the accused. See *Mullins v. State*, 269 Ga. 157, 158-159 (3) (496 SE2d 252) (1998). Upon reviewing the trial court's questioning in this case, we conclude that it did not cross the line, but rather, was interposed for the purposes of developing the truth in the case and of clarifying the witnesses' testimony. Accordingly, no

violation of OCGA § 17-8-57 occurred. See id.; see also *Sims v. State*, 306 Ga. App. 68, 71-72 (2) (701 SE2d 534) (2010).

3. Littlejohn also contends that the trial court erred in admitting similar transaction without conducting a USCR 31.3 hearing.[4]

The record shows that the State filed a notice of intent to introduce similar transaction evidence. During a pretrial hearing, Littlejohn's counsel announced that there was no need for a similar transaction hearing because he was willing to stipulate that Littlejohn's prior burglary was admissible as similar transaction evidence. The State nevertheless insisted upon an abbreviated hearing so that it could state its purpose for introducing the similar transaction evidence on the record. During the abbreviated hearing, the State informed the trial court that the similar transaction evidence was based upon Littlejohn's 1999 burglary conviction and stated that the

---

[4] Before similar transaction evidence may be admitted, a USCR 31.3 (B) hearing must be held and the State must show "that it is seeking to introduce the evidence for a permissible purpose; there is sufficient evidence that the accused committed the independent offense or act; and there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter." (Citation omitted.) *Robinson v. State*, 312 Ga. App. 736, 751 (5) (719 SE2d 601) (2011). Although USCR 31.3 provides the right to a hearing, it does not require an evidentiary hearing for the production of testimonial evidence. See *Harvey v. State*, 284 Ga. 8, 11 (4) (d) (660 SE2d 528) (2008).

purpose of the evidence was to show Littlejohn's modus operandi, plan, and scheme since the burglaries were accomplished in very similar manners. The State's notice attached the 1999 indictment, which set forth the factual basis for the prior burglary offense, and the sentencing form entering the judgment of conviction. Littlejohn's counsel stipulated that there was no objection to the similar transaction evidence, and that the requirements of USCR 31.3 had been met. The stipulation was entered on the record while Littlejohn was present in court, and Littlejohn did not repudiate trial counsel's authority to make the stipulation at that time.

Contrary to Littlejohn's claim, the foregoing shows that a USCR 31.3 (B) pretrial hearing was held, although the hearing was abbreviated in light of the stipulations made by Littlejohn's counsel. Likewise, there is no merit to Littlejohn's claim that the stipulations were invalid since the record did not reflect his personal, express authorization of the stipulations. See *Martin v. State*, 251 Ga. App. 149-150 (1) (553 SE2d 827) (2001) (rejecting a defendant's claim that his defense attorney's stipulation failed because the record did not contain his personal waiver as to the stipulated facts). The record shows that Littlejohn did not repudiate the oral stipulations made in open court in his presence. Littlejohn therefore acquiesced in the stipulations, and the stipulations were binding upon him. Id. In light of the

15

stipulations, any objection that Littlejohn had to the admissibility of the challenged evidence was waived. See *Damerow v. State*, 310 Ga. App. 530, 534 (3) (714 SE2d 82) (2011). To the extent that Littlejohn argues that his trial counsel was ineffective in stipulating to the similar transaction evidence, his claim will be addressed in Division 5 (a) below.

4. Littlejohn asserts that the trial court erred in restricting the scope of his cross-examination of witnesses regarding the informant's prior criminal history. Again, no error has been shown.

> Although each party has a right to a thorough and sifting cross-examination of the other party's witnesses, such right is not unfettered, and a trial court may restrict the scope of cross-examination to the issues, and its exercise of discretion will not be interfered with on appellate review unless manifestly abused.

(Citation omitted.) *Crosby v. State*, 287 Ga. App. 109, 114 (3) (650 SE2d 775) (2007).

The record reflects that in response to the prosecutor's direct examination questions, the investigator testified at length regarding the informant's prior criminal history, including his numerous arrests and convictions. When Littlejohn's trial counsel began to cross-examine the investigator as to the same issues that had already

16

been explored in his earlier testimony, the trial court interrupted his questioning and conducted a bench conference. During the bench conference, the trial court directed counsel not to elicit cumulative testimony. The trial court nevertheless ruled that trial counsel was allowed to question the investigator as to the informant's reliability pertaining to the instant case.

Contrary to Littlejohn's contention, the trial court did not abuse its discretion in controlling the scope of cross-examination. The trial court was authorized to exclude cumulative questioning on matters that had already been covered. See *Osborne v. State*, 291 Ga. App. 711, 714 (4) (662 SE2d 792) (2008); *Hopson v. State*, 281 Ga. App. 520, 522 (1) (b) (636 SE2d 702) (2006).

5. Finally, Littlejohn contends that his trial counsel provided ineffective assistance in several respects.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and

17

credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation omitted.) *Jones v. State*, 318 Ga. App. 342, 345-346 (3) (733 SE2d 400) (2012).

(a) Littlejohn argues that his trial counsel was ineffective (i) in stipulating to the similar transaction evidence of his prior burglary conviction, (ii) in placing his character in issue, and (iii) in failing to join in the prosecutor's request for curative instructions when the informant testified that he and Littlejohn had previously been incarcerated together. Littlejohn's arguments are unavailing.

(i) Littlejohn has failed to show that trial counsel was ineffective for stipulating to the similar transaction evidence.

"Entering into a stipulation is a valid trial strategy, and reasonable trial strategy does not constitute deficient performance." (Citations and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 35 (4) (e) (644 SE2d 837) (2007). This Court has previously held that a trial counsel's stipulation to a defendant's prior conviction may

18

constitute reasonable trial strategy, which we will not second guess on appeal. See

*Jones*, supra, 318 Ga. App. at 349-350 (3) (b). At the motion for new trial hearing,

trial counsel testified that he stipulated to the similar transaction evidence since it

clearly met the prerequisites for admissibility in the case. Trial counsel further

explained that his strategy was to address the similar transaction evidence at trial by

pointing out the differences in the prior burglary. The record confirms that the similar

transaction evidence establishing Littlejohn's prior 1999 conviction for burglarizing

another residence in Monroe County was sufficiently similar and was admissible for

the proper purposes of showing Littlejohn's modus operandi, plan, and scheme. See

*King v. State*, 246 Ga. App. 100, 101-102 (2) (539 SE2d 614) (2000); *Henderson v.*

*State*, 190 Ga. App. 243 (378 SE2d 530) (1989). "There is no deficient performance

when an attorney fails to object to admissible evidence." (Citation omitted.) *Poole v.*

*State*, 291 Ga. 848, 857 (8) (734 SE2d 1) (2012). As such, no error has been shown

from trial counsel's strategies of stipulating to the admissibility of the similar

transaction evidence and electing to challenge the substance of the evidence during

the trial.

(ii) Littlejohn has likewise failed to show that trial counsel was ineffective in

interjecting character evidence during the cross-examination of a witness. In this

19

regard, Littlejohn claims that his trial counsel erred by asking the investigator whether he was aware of Littlejohn's prior burglary conviction in Monroe County. At the motion for new trial hearing, trial counsel explained that he made a strategic decision to pursue this line of questioning since he knew that the prior burglary conviction would be admitted as similar transaction evidence, and the evidence was useful to challenge the investigator's failure to compare the partial fingerprints found at the scene of the burglary to Littlejohn's fingerprints that were of record due to his prior conviction.

"Generally, strategic decisions regarding which defense theories to pursue and the manner of conducting cross-examination are within the exclusive province of the attorney after consultation with the client and do not amount to ineffective assistance." (Citation omitted.) *Boatright v. State*, 308 Ga. App. 266, 269 (1) (b) (707 SE2d 158) (2011). The trial court was authorized to find that trial counsel's cross-examination of the investigator was part of a valid trial strategy to point out the alleged deficiency in the investigation. See id. at 269-270 (1) (b). Accordingly, Littlejohn's ineffective assistance claim fails. Id.

(iii) The record further shows that in response to the prosecutor's examination, the informant testified that he was familiar with Littlejohn because they had been

20

incarcerated together. The prosecutor promptly interrupted and asked the trial court to give the jury a curative instruction to disregard the informant's statement. The trial court denied the request, finding that the testimony was not problematic in light of the introduction of the similar transaction evidence showing Littlejohn's prior burglary conviction. Although Littlejohn now argues that his trial counsel erred in failing to join in the prosecutor's request for a curative instruction, his claim is without merit. To the extent that the brief reference to Littlejohn's prior incarceration was merely cumulative of the admissible evidence of his prior burglary conviction, Littlejohn has failed to show the requisite prejudice to support his claim. See, e.g., *Bridges v. State*, 286 Ga. 535, 540-541 (7) (690 SE2d 136) (2010). Moreover, since it affirmatively appears from the record that the trial court in its discretion would have denied the request for a curative instruction, trial counsel's failure to join in the prosecutor's request does not constitute ineffective assistance. See *Head v. State*, 288 Ga. App. 205, 208 (2) (653 SE2d 540) (2007). It is axiomatic that the "[f]ailure to pursue a futile motion does not constitute ineffective assistance." (Punctuation and footnote omitted.) Id.

(b) Littlejohn also contends that trial counsel was ineffective in failing to move for a mistrial when jurors observed him in shackles. At the motion for new trial

hearing, Littlejohn testified that the jury had seen him in handcuffs during a break in the trial. Littlejohn stated that he had reported the matter to trial counsel, but no arrangements were made to address the issue. In contrast, trial counsel testified that Littlejohn never brought the matter to his attention.

In light of the conflicting testimony as to this issue, the trial court was faced with a credibility determination. The trial court was authorized to believe trial counsel's testimony that Littlejohn never reported the observation matter, and its resolution of that issue was not clearly erroneous. See *Pattillo v. State*, 304 Ga. App. 344, 345 (696 SE2d 370) (2010) (ruling that a trial court is authorized to disbelieve a defendant's self-serving testimony in favor counsel's testimony in deciding a claim for ineffective assistance of counsel); see, e.g., *Wilson v. State*, 257 Ga. App. 113, 116 (2) (a) (570 SE2d 416) (2002) (ruling that when deciding the issue of ineffective assistance of counsel based upon conflicting testimony, the trial court must make a credibility determination).

> Moreover, although a defendant has the right to be free of the atmosphere of partiality created by the use of excessive guards or shackles in the courtroom, the mere fact of seeing an indicted accused in custody - not in the courtroom, as in the instant case, is not grounds for an automatic mistrial. Even if his trial counsel had moved for a mistrial, [Littlejohn] has not demonstrated any likelihood that the

22

motion would have been granted, particularly given the vague circumstances surrounding the alleged sightings. And assuming custodial sightings occurred, he has not shown that the sightings tainted the jury or prejudiced him. Accordingly, he cannot satisfy the prejudice prong of his ineffective assistance claim.

(Citations and punctuation omitted.) *Stott v. State*, 304 Ga. App. 560, 562 (2) (a) (697 SE2d 257) (2010).

(c) Lastly, Littlejohn argues that trial counsel was ineffective in failing to object when the trial court intimated an opinion regarding the informant's credibility. Littlejohn's arguments are premised upon the trial court's questioning of the witnesses at trial, which we have addressed in Division 2 above. As previously discussed, the trial court did not intimate an opinion in its questioning of the witnesses. Rather, the trial court's questions were permitted in order to clarify the testimony and to develop the truth of the case. See *Mullins*, supra, 269 Ga. at 158-159 (3). Since no error occurred, trial counsel was not ineffective in failing to interpose a meritless objection. See *Cotton v. State*, 308 Ga. App. 645, 646 (708 SE2d 392) (2011) ("[F]ailure to make a meritless objection cannot be evidence of ineffective assistance of counsel.") (citation and punctuation omitted).

*Judgment affirmed. Ray and Branch, JJ., concur.*