**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 5, 2015**

# In the Court of Appeals of Georgia

A14A1508. WILLIAMS v. THE STATE.

MILLER, Judge.

Following a jury trial, Clinton Delray Williams was convicted of aggravated assault (OCGA § 16-5-21 (b)), possession of a firearm during a crime (OCGA § 16-11-106 (b)), and aggravated battery (OCGA § 16-5-24(a)).[1] He appeals from the denial of his motion for new trial , contending that the trial court erred by overruling his objection to particular testimony and that he received ineffective assistance of counsel . For the reasons that follow, we affirm.

---

[1] Williams was also charged with another count of aggravated assault (OCGA § 16-5-21(b)) and with criminal trespass (OCGA § 16-7-21) . The trial court merged the two aggravated assault counts and granted Williams a directed verdict on the criminal trespass count.

On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict. . . . [W]e neither weigh the evidence nor assess the credibility of witnesses, but merely ascertain that the evidence is sufficient to prove each element of the crime beyond a reasonable doubt. Moreover, conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, the jury's verdict will be upheld.

(Punctuation and footnotes omitted.) *Goss v. State*, 305 Ga. App. 497, 497-498 (1) (699 SE2d 819) (2010).

So viewed, the evidence shows that, at about 1:00 a.m. on the day in question, the victim walked from his apartment in Clayton County to a nearby gas station to buy cigarettes. After making his purchase, the victim approached Williams's car, a red Corvette parked near the gas pumps. . The victim asked Williams for a light. Williams did not like the way the victim was looking at his car, so he rolled down his window and told the victim to "get the 'F' away from [Williams's] car." The victim backed away from Williams's car, towards the front of the store, and borrowed a lighter from someone else. Williams drove up to the front of the store, where he and the victim engaged in a heated argument. While the men were arguing, Williams

walked back to his car, retrieved a gun, and started shooting at the victim. The victim began running as soon as he heard the first gunshot, but was shot in his legs and buttocks. He ran to the apartment complex behind the gas station, knocked on the first door he saw, and asked the woman who answered the door to call 911.

Clayton County Police Department officers responded to a call that there was an armed person at the gas station and when they arrived, Williams was standing beside a red Corvette and holding a gun. At the officers' direction, Williams put down his gun and the officers detained him. The officers then received a second call from the apartment complex behind the gas station, indicating that a person had been shot. Police officers, as well as EMTs, responded to the apartment complex. The victim gave the officers a quick statement, reporting that he had been shot at the gas station by a black man who was driving a red Corvette. Then, an ambulance took the victim to the hospital, where he was treated for gunshot wounds.

Following his arrest, Williams waived his right to remain silent and agreed to be interviewed by police officers. During his interview, Williams admitted that he shot the victim because he was not comfortable with the way the victim had been looking at his car and he wanted to protect his property.

1. Williams contends that the trial court erred by overruling his objection to a certain portion of the arresting officer's testimony, regarding whether the officer had visited the victim at the hospital. In the relevant exchange, the arresting officer testified that, although he went to the hospital to check on the victim, he did not speak to the victim at that time. This testimony appeared to be inconsistent with the victim's testimony that a police officer interviewed him at the hospital.[2] The State asked the officer if he believed the victim would be "mistaken" to the extent he reported an in-hospital conversation with the police. Defense counsel objected to this testimony as speculative. The court overruled the defense's objection. The arresting officer then testified that the victim would be mistaken on this point, and reiterated his testimony that the only time he spoke to the victim was in the apartment complex breezeway.

On appeal, Williams argues that the trial court erred by allowing the arresting officer to testify that the victim was mistaken about speaking to the officer at the hospital. Williams contends, first, that this testimony was impermissible bolstering because the officer was sharing his belief that the victim's misstatements were innocent mistakes rather than calculated lies. Before the trial court, however,

[2] Later in the trial, another officer testified that he interviewed the victim at the hospital.

4

Williams did not object to the testimony on this ground. He has therefore waived this argument. See *Arnold v. State*, 301 Ga. App. 714, 716 (2) (688 SE2d 656) (2009) (where defendant objected to officer's testimony on the grounds that it was improper opinion and speculation, but not on the ground of improper bolstering, the bolstering objection was waived on appeal).

Williams also contends that this testimony was impermissible speculation, because the arresting officer could not have known the reason for the victim's misstatement. Williams's argument is not persuasive. Pretermitting whether the trial court erred by overruling Williams's speculation objection, any error was harmless in light of the overwhelming evidence against Williams, including the surveillance video from the gas station , the victim's testimony , and Williams's custodial statements admitting to the offense . See *Archer v. State*, 291 Ga. App. 175, 177-178 (2) (661 SE2d 230) (2008) (any error in admitting hearsay evidence was harmless in light of overwhelming evidence of guilt).

2. Williams also contends that his trial counsel was ineffective for failing to request a curative instruction or mistrial after the challenged testimony. We disagree.

> To prevail on a claim of ineffective assistance of counsel, a
> defendant must show that counsel's performance was deficient and that

the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citations and punctuation removed). *Littlejohn v. State*, 320 Ga. App. 197, 205-206 (5) (739 SE2d 682) (2013).

At the motion for new trial hearing, trial counsel testified that one of his most important goals during the trial was to discredit the victim and the arresting officer by highlighting any inconsistencies between their testimony. Trial counsel believed that the officer's testimony that the victim was "mistaken" as to whether they spoke at the hospital was "extremely favorable" to his trial strategy, because it highlighted an inconsistency and because it could be construed as the officer making an excuse

6

for the victim's misstatement. Trial counsel explained that he did not request a curative instruction because he saw no basis for one , and he did not request a mistrial because he believed that, if the case was re-tried, the State would cure any inconsistencies between the victim's testimony and the officers' accounts. Accordingly, trial counsel believed that the defense would lose any ground it had gained during the original cross-examinations.

Here, counsel's decisions on how to address the arresting officer's testimony were matters of trial strategy and, therefore, will not support a claim of ineffective assistance. See *Littlejohn*, supra, 320 Ga. App. at 207 (5) (ii) (counsel's strategic decisions as to which defense theories to pursue are within the exclusive province of the attorney and do not constitute ineffective assistance). Trial counsel's failure to request a curative instruction or mistrial also will not support a claim of ineffective assistance because it affirmatively appears that the court would have denied such requests, given that it overruled counsel's objection to the same testimony . See *Owens v. State*, 271 Ga. App. 365, 370 (5) (609 SE2d 670) (2005) ("Failure to make a meritless or futile objection or motion cannot be evidence of ineffective

assistance.") (citations omitted). Moreover, as counsel explained at the motion for new trial hearing, the challenged testimony actually supported the defense's primary trial strategy because it highlighted an inconsistency in the State's case. Under these circumstances, Williams cannot show that counsel's failure to request a curative instruction or mistrial caused him any prejudice.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur.*